Riddle v. Baker.

---

RIDDLE *et als. v.* BAKER *et als.*

13    295
121   423

13    295
147   693

An appeal lies from an order setting aside a final decree in equity and granting a rehearing.

To obtain the aid of Chancery to vacate a judgment a party must show that he has exhausted all proper diligence to defend in the suit in which judgment was rendered. If he relies on fraud and deception practised on the Court in managing, procuring, and giving, evidence, he must show that, by such practices, he was *defrauded of his opportunity to defend,* and that his defense would, otherwise, have been effectual.

And the sureties on a bond, given by the party in the original suit, to perform any decree that might be rendered therein stand in no better position. They are not parties to said suit, but are bound absolutely by the decree, subject to the single exception—that, if the decree be procured by collusion between plaintiff, their principal, and the defendant, they are not bound.

The matter relied on in the bill in this case could be availed of only by bill of review, with proper averments.

APPEAL from the Fourth District.

The facts are sufficiently stated in the opinion.

The bill was filed by Bartol, Riddle & Eaton, against Baker, Lockwood, Baldwin & Jenkins. Subsequently, by consent, others were made parties as having some interest in the decree sought to be set aside. Bill prayed an injunction against enforcing the judgment in *Baker* v. *Riddle,* and new trial in *Baker* v. *Bartol.* Baker demurred, for want of facts to constitute a cause of action, and that the Court had no jurisdiction of the subject of the action. Subsequently he answered, denying the allegations of fraud, etc.

The case was sent to a referee by stipulation, who reported a judgment to the effect that plaintiffs were not entitled to any relief and that the injunction originally granted, restraining defendant, Baker, from enforcing the judgment obtained by him against Riddle and Eaton, be dissolved.

*Shafters, Park & Heydenfeldt,* for Appellants : 1st. The order granting a new trial was revisable. (Prac. Act, Sec. 187 ; 6 Cal. 83 ; 4 Id. 122.) 2d. This suit is an attempt to review a decree of the Supreme Court, which cannot be done without permission of that Court. (Prac. Act, Sec. 358 ; 3 Cal. 214 ; 5 Id. 192 ; 6 Id. 145 ; *Stafford* v. *Bryan,* 2 Paige, 45 ; *Southard et al.* v. *Russel,* 16 How. 576 ; 8 Cal. 32.)

III. The complaint does not state facts sufficient to justify the relief sought.

This is not an original bill to impeach a decree for fraud ; such bill lies only where the party has, by some *finesse,* been deprived of his day in Court. (3 Barb. 619 ; 2 Peere. Wms. 74.) It is a bill, " not original " to review a decree where the party has had his day in Court. The bill does not ask a new trial on the ground of newly discovered evidence. In such bills the evidence and the names of the witnesses must be stated, with their affidavits annexed. (3 Graham on New Trial; *Perry* v. *Cochran,* 1 Cal. 180 ; *Rogers* v. *Huie,* Id. 429.)

No surprise is alleged, nor could there be any, for the complaint, in *Baker* v. *Bartol,* averred the goods to be worth forty thousand dollars, giving Bartol full notice that plaintiff, in that suit, would attempt to prove the very point now complained of, to wit : The excessive value put by Lockwood & Baldwin on the

goods. (*Turner* v. *Morrison*, 11 Cal.) When new trials have been granted in equity, on the ground of surprise at evidence, the evidence has related to some point not definitely raised by the pleadings. (3 Gra. 1531, 962, 967 ; *Smith* v. *Morrison*, 3 A. K. Marsh, 81 ; *Burr* v. *Palmer*, 23 Vt. 254 ; 6 Cal. 228.)

Affirmatively, the bill claims a new trial on the ground of perjury by subornation. This is no ground, for two reasons : 1st. It is not charged that the witnesses have been convicted of perjury. (3 Gra. 1469, Note ; *Respass* v. *McClanahan*, Hard. Ky. 346 ; *Brewer* v. *Bowman*, 3 J. J. Marshall, 493 ; *Attorney-General* v. *Woodhead*, 2 Price, 3, Ex.; *Harrison* v. *Harrison*, 9 Id. 34, Ex.; *Smith* v. *Lowey*, 1 John. Ch. 320.) 2d. Perjury of the witnesses is no defense to the original suit—*Baker* v. *Bartol*. It simply impeaches their credit, and this is no ground for new trial. (16 How. 547 ; *Livingston* v. *Hubbs*, 3 John. Ch. 125.) Again : 3d. It is not averred that the original decree has been performed. (*Wise* v. *Blackly*, 2 J. Ch. 490 ; *Williams* v. *Mellish*, 1 Ver. 117 ; *Markly* v. *Rand*, 12 Cal.) 4th. No excuse is given for not moving for a new trial in *Baker* v. *Bartol*, or for the non-production of the evidence on the trial of that suit. (3 Gra. D. W. on New Trials, 1485, 1486 ; *Phelps* v. *Peabody*, 7 Cal. 60.)

IV. Interest on the part of the witnesses, Lockwood and Baldwin, is no ground for new trial. (*Tovey* v. *Young*, cited in 1 J. Ch. 323 ; *Turner* v. *Plaite*, 1 Term 717.) Besides, the witnesses were not proved to be interested. (1 Green. Ev. Sec. 390 ; Ten Eyck, 5 Wend.) Again, the bill does not state, nor does the proof show, any diligence at the trial to test the competency of the witnesses by examination on the *voir dire*, or by cross-examination. (1 T. R. 717.)

*E. Cook* and *McDougal & Sharp*, for Respondents.

1st. Riddle & Eaton were not parties to the suit of *Baker* v. *Bartol*, and consequently are not in a position to ask a review of that decree, so far as the parties are concerned. 2d. They do not ask to review the judgment obtained against them at law, but they ask that, for reasons which came to their knowledge after judgment against them, Baker be enjoined from enforcing that judgment.

It is questionable whether, if they had known the facts when the suit was brought against them, they could have set up this defense to an action at law. But the facts were not known to them, and if they had been, they were not obliged to make the defense at law. (*Lorraine* v. *Long*, 6 Cal. 452.)

A party has a right to a day in Court; these plaintiffs, Riddle & Eaton, have not had theirs. They are not chargeable with Bartol's laches in the original suit. The plaintiffs were mere sureties for Bartol in the original suit, and only liable as such to the extent of sureties for a receiver, or any other naked surety. They are not bound by the decree against Bartol. They had no opportunity to defend the original suit. They had no power to call witnesses and conduct the trial, and the moment they ascertained the facts they filed their bill. (*Carmack et als.* v. *The Commonwealth, for use of Boggs*, 5 Binney, 184; see also *McKeller et al.* v. *Bowell & Campbell*, 4 Hawks, 34; *Douglass* v. *Howland*, 24 Wend. 53, and cases there cited; see cases cited on page 55; also cases cited from Virginia and Ohio; *Beall* v. *Beck*, 3 Harr, and McHenry, Md. 242.)

Here was a fraud committed by the obligee upon the obligor of a bond, and it being a fraud practiced upon them when they were not in a position to guard against it, they should be relieved. If Bartol and the plaintiff, in the original suit, had conspired together to fix a false liability upon the sureties, any judgment or decree, rendered in pursuance thereof, would be set aside. Besides, the obligation of the surety would be void, independent of any trial between debtor and creditor. (*Pidcock* v. *Bishop*, 3 B. & C. 605, reported in 10 Eng. Com. Law Rep. 276; *Stone* v. *Compton*, 5 Bing. N. C. 142; see also *Middleton* v. *Lord Onslow*, 1 P. Wms. 768; *Cecil* v. *Plaistow*, 1 Anst. 202; *Nerot* v. *Wallace*, 3 T. R. 17; *Knight* v. *Hunt*, 5 Bing. 142; *Jackson* v. *Mitchell*, 13 Ves. 581; *Cockshatt* v. *Bennett*, 2 T. R. 763; *Jackson* v. *Lomus*, 4 T. R. 166; *Stark* v. *Mawson*, 1 Bos. & P. 286. See observations of Buller, J. and Lord Tenterden, C. J. in *Jones* v. *Yates*, 9 B. & C. 532; *Leicester* v. *Rose*, 4 East. 372, overruling *Friz* v. *Randall*, 6 T. R. 146.)

Again: the decree against Bartol did not fix the liability of the sureties. Suppose they had just after the decree against Bartol discovered the fraud they now allege, and had defended

upon that ground, could it have been urged that they were con-
cluded by the decree against Bartol, and because he had been
guilty of laches they could not make a defense which was a
direct fraud upon them? They undertook only upon the ground
that both parties would act in good faith toward them, and the
decision against Bartol cannot affect their rights.

Again: this is not a bill of review, and it was not necessary
to apply to the Court for leave to file it or show its performance.
They were not parties, and could not apply for a review. But
it is an original bill filed for the purpose. (*Sanford* v. *Head &
Merrill,* 5 Cal. 298; 1 Sandf. Ch. 120; *Reizal* v. *Wood,* 1 John.
Ch. 401; *Carneal* v. *Wilson,* 3 Littell, 90; Story's Eq. Pl. Sec. 426;
Comyn Dig. Ch. Chap. 2, Vol. 2, p. 36; Id. T. 7, Vol. 2. p. 109;
Id. 3 M. Vol. 2, p. 225; Id. 3 N. 1, Vol. 2, p. 229; Id. 3 W. Vol.
2, p. 257; *Welsh* v. *Barrett,* 15 Mass. 379.) *Per curiam.* "A new
trial is granted; it appearing that the interest of the witness
was not known to the plaintiff until after the trial, and that it
was known to the defendant, who produced him." If good at
law when discovered while the case is *in fieri,* why not good in
equity when discovered, after the law side of the Court has lost
its power to correct the wrong? (*Dobson* v. *Pearce,* 2 Ker. N.
Y. 156.)

We refer to the following authorities to show that the fraud
in procuring a judgment, is not limited to fraud in depriving a
party of his day in Court, or indeed to any particular fraudulent
contrivance; but, as in all other questions of fraud, depends
upon the circumstances of each particular case—the circum-
stances constituting fraud being as various as are the devices
of ingenious and covinous men. (Willard's Eq. 347; 2 Story's Eq.
Juris. Secs. 875—877, 880—887; *Countess of Gainsborough* v. *Gif-
ford,* 2 Peere. Wm. 424; *Huggins* v. *King,* 3 Barb. 616; 7 Paige,
451—459; 19 Conn. 84—88; *Carneal* v. *Wilson,* 3 Littell, 90;
*Reed* v. *Perry,* 1 Monroe, 256; *Fish* v. *Lane,* 2 Haywood, 342;
*Ambler* v. *Wild,* 2 Wash. Virg. 36—41; *Barnsby* v. *Powell,* 1
Vesey, 289; *Chesterfield* v. *Jansen,* 2 Vesey, 155; *Mitchell* v.
*Harris,* 2 Vesey, Jr. 135; *Bradish* v. *McGee,* Ambler, 229; *Mas-
sell* v. *Morgan,* 3 Brock. C. C. 74; Mitford's Pl. 73, 237, *et seq.*)

The complaint in this case is not founded on surprise. Nei-
ther is the perjury of witnesses, the foundation of our bill.

False swearing does not necessarily give jurisdiction; but where the truth is suppressed, or a falsehood stated by interested witnesses, acting in concert with the party, and the opposite party, being ignorant of the combination, is injured by such covinous suppression or falsehood, equity will give him relief. Until the fact is ascertained, the subject of the fraud cannot take advantage of it; whenever discovered, the party wronged may ask the aid of equity, and he cannot be guilty of laches, if he makes the appeal upon the first opportunity. It has been said that Bartol had abundant opportunity pending the trial, to have contradicted the witnesses—Lockwood and Baldwin. All that appears on this subject, is the fact that time was given to Bartol to bring forward witnesses, but who can say, that when Lockwood and Baldwin, the Clerks in the establishment, had thus sworn, it was at the time practicable for Bartol to contradict them. The presumption is, that he attempted to do so, but not then having the cue to the true relations of these witnesses, and being ignorant of the conspiracy against him, he was disarmed.

On the hearing the Respondent moved to dismiss the appeal, on the ground that the granting of a rehearing in equity was not the subject of review. The position was conceded, but on the cross-motion to dismiss for want of equity, the whole case was considered. Without discussing the question we still insist that the appeal must be dismissed for the cause assigned, and again refer to the decision of this Court in *Gray* v. *Eaton*, (5 Cal. 448); *Dominguez* v. *Dominguez*, (7 Id. 426); *Still* v. *Saunders*, (8 Id. 286.) It was within the discretion of the Court below to grant a rehearing, either upon petition, or of its own motion. The rule in equity is, that the cause shall go to final decree before review on appeal.

*Shafters, Park & Heydenfeldt*, in reply :

The bill is a bill of review. The amended bill asks for a new trial in terms. It seems to be conceded that if Bartol was the sole plaintiff, no relief would be due him on the facts alleged, other than a review in the original suit. The question then is, does the fact that Riddle & Eaton have joined in the suit because they are debtors in a dependent judgment, enlarge

Riddle v. Baker.

the right of Bartol as against the principal judgment? The question suggests its own answer. The dependent judgment neither adds to, nor detracts from, the strength of the principal judgment. It gives to the alleged perjury of Lockwood and Baldwin no additional point, either in law or morals. If the perjury assigned, in itself considered, is a ground merely for new trial, it can make no difference whether the relief on the basis of it is asked by one or a dozen plaintiffs. The reasoning upon the other side, goes upon the assumption that the plaintiffs, Riddle & Eaton, have an equity distinct from the equity of Bartol, and personal to themselves. But they unite with Bartol in asking that that judgment be reviewed, and a new trial granted on the ground of the perjury alleged in procuring it. The question made is controlled by the maxim *accessorium non ducit sequitur suum principale*. Riddle & Eaton count on Bartol's right—they claim through him, and they are affected with his laches, they take him *cum onere*, and they can claim no relief except such as can be claimed by him, viz: a review. Sureties in replevin and attachment bonds, and in bonds like that given by Riddle & Eaton, are bound by judgments rendered against their principals. We cannot reason from one class of surety contracts to another. Every contract is to be enforced according to its own terms. By the contract of Riddle & Eaton, they agreed to respond, personally, to any judgment that might be obtained against Bartol. When such judgment was obtained, the *casus fœderis* had arisen.

This bill contains no charge of collusion between Baker and Bartol; so that *Douglass* v. *Howland*, (24 Wend. 53,) has no application. So of the other cases cited. The bonds there were not to pay any judgment that might be rendered; but that, if the officer should be guilty of neglect, the sureties would pay all damages, etc.

BALDWIN, J. delivered the opinion of the Court—Terry, C. J. concurring.

A preliminary motion is made by Respondent to dismiss this appeal. The ground is, that the order appealed from is not a final judgment or order, disposing of the merits of the case, but is only a rehearing in equity, which is not appealable matter,

A decree, final in form and effect, was entered for the Appellants on the coming in of the referee's report; and this decree was, on motion of the Respondents, set aside. The effect of this order was to give the Respondents a new trial. There is no substantial difference between a rehearing in an equity case which opens a decree and places the case before the Court for trial *de novo*, and a new trial in a case at law, tried and decided by the Court. The mode of trial is the same, and the effect of the order the same in both cases.

For convenience and uniformity, we have held that the Practice Act, regulating proceedings in civil cases, applies as a general rule, as well to equity as common law suits. The statute gives a right of appeal from orders granting or overruling motions for new trials; and this is substantially, if not literally, such a motion.

The questions involved in this dispute grow out of this state of facts : Cronin & Markley, once merchants of San Francisco, in 1851 made an assignment of goods to Bartol & McVickar; the assignors owed one Pendleton; he assigned his claim to one Baker, defendant in this suit, who held for himself and one Jenkins. Baker, in 1854, filed his bill against Bartol—McVickar then being dead—charging fraud in the assignment, and that these assignees had received over thirty thousand dollars from the assigned property—goods—over and above all incumbrances, etc. which sum, it is charged, was, or should be, subject to the claim of the plaintiff. This claim had been reduced to judgment. Bill prayed appointment of receivers. The Court, by its order, directed Bartol to submit to the appointment of a receiver, or to give bond to perform any decree that might be rendered against him. Bartol gave the bond, and plaintiffs here, Riddle & Eaton, were his sureties. This case was tried in November, 1855. Lockwood and Baldwin were witnesses on the trial, and swore for the plaintiffs, fixing, by their testimony, the value of the goods assigned at forty thousand dollars. The case was decided for plaintiffs. Defendants appealed to Supreme Court; decree affirmed. (See 6 Cal. 483.) No stay of proceedings was had, and Baker, soon after the decree, sued Riddle & Eaton on their bond; got judgment. Case appealed to Supreme Court; judgment there affirmed. (7 Cal. 551.) After this affirmance

the plaintiffs filed this bill, alleging that the decree was obtained on the testimony of these two witnesses, Lockwood and Baldwin; that this decree was procured by conspiracy, fraud, and perjury; that the defendants secretly conspired together to obtain the decree, well knowing that there was no legal or equitable foundation for the same; that fraud, deception, and imposition, were practised upon the Superior Court in the managing, procuring, and giving, the evidence upon which the decree was obtained; and, in this connection, the plaintiffs allege some facts not material, as to the manner of the obtaining of this claim by Baker; then that Jenkins, Lockwood, and Baldwin, were Clerks of Cronin & Markley; that they were to get, for being witnesses, a part of the recovery; that they were to swear falsely to the value of the goods; that they did so swear; that a judgment was obtained on their testimony; and that the plaintiffs only knew of these facts after the judgment was affirmed in the Superior Court on the bond.   The bill prays for an injunction.

Several very formidable points of exception are taken by the defendants to this proceeding—to some of which it has vexed the characteristic ingenuity of the counsel for the Respondent to give a plausible answer.   But it is not necessary to consider these questions, as, in our judgment, another point, arising on the proofs, is clearly fatal to the whole case.

Upon the trial of the case of *Baker* v. *Bartol,* before Judge Shattuck, these facts appear: That the case was continued several times at request of defendant; when called for trial and the evidence closed on the part of the plaintiff the defendants procured a postponement to get in evidence; after this period elapsed, and the defendant not appearing, one or more adjournments were had before Bartol arrived; when he arrived he said that he had evidence which would explain and contradict the evidence that had been introduced by the plaintiff, and that he must have it there; the case was again adjourned.   No such evidence, after all these delays, was procured, and the case was decided after being fully argued.

It seems that the only matter of controversy was the value of these goods.   There appears to have been no insuperable difficulty to procuring full proofs on this subject, for, even on the trial of this suit below, occurring a long time after the first,

various witnesses, who seem to have had knowledge on the subject, gave testimony in respect to the value, and their estimates differ very much as to what that value was. Lockwood and Baldwin were not examined on their *voir dire*, or otherwise, as to their interest, nor was any attempt made to discredit them. The question arises on this state of facts: Could Bartol, under the circumstances, at this late day, after all the litigation and all these opportunities for litigating these questions, file a bill to set aside the decree thus rendered and thus affirmed on the ground of fraud recently discovered, as to the mode or circumstances in which the testimony was procured against him on the trial? We are at a loss to see upon what principle. Chancery would only interpose to vacate a solemn judgment (alleged only to be wrong in part, too,) upon the ground of irreparable injury done to a party who had no other means of relief against it. But a party, to obtain the aid of Chancery must show that he has exhausted all proper diligence to defend at law, or to defend in Chancery if the first suit was in that form. The fraud or practices of the other party are no excuse to him for not attempting to counteract them. He must show that he was defrauded of his opportunity to defend, and that his defense, which, but for the practices of his adversary, would have been effectual, was, by such practices, rendered unavailing.

To hold that a party may stand by, and, discovering improper practices, or illegitimate arts, in the management or conduct of his case by his antagonist, neglect to countervail them when in his power, or when he sees incorrect or even perjured testimony offered, refuse to go further with the case, and then rely upon the fact that this course has been pursued as a ground for avoiding the judgment, would make litigation perpetual. The very object of a trial is, to afford each party an opportunity of contesting fully all the proofs and all the principles of law relied on by the other side; and if false testimony be introduced, it must be met and combatted, when that is practicable, at the trial, or so soon after as possible—if the falsity is not, and could not, with all proper diligence, be discovered before. In this case no such efforts appear to have been made. The defendant, Bartol, had full notice by the pleadings of what was alleged and what would be attempted to be proven against him. The issue of fact

was extremely simple. It involved the value of certain goods. The knowledge of this value did not lie exclusively with the plaintiffs' witnesses. By the showing made years afterwards, it appears that evidence on this subject could have been obtained from other sources. These assignors were merchants, whose business and stock were known to their customers and to their competitors in trade. The Court extended unusual liberality and indulgence to the defendant. Long delays intervened after he was fully apprised of the precise case made against him. He did not even cross-examine the plaintiffs' witnesses as to their relations to the case; nor did he seek to contradict them by other proofs. The case was tried and decided—appealed, and decided again. That, upon these facts, the defendant could not, if, under any circumstances he could, have filed a bill like this to vacate this affirmed judgment, can scarcely be contended. The ready answer to his application would be, that he had not done all he could to avoid that which he now, without such efforts, seeks to annul. Indeed, this matter would not be sufficient ground for a motion for a new trial, for newly discovered evidence, in an ordinary case.

But it is urged that these plaintiffs, his sureties, to answer the decree, stand on better ground. We do not think so. We admit, that if there had been collusion between Bartol and the plaintiffs to get and suffer this judgment, the case might, and probably would, be different. But there is no pretense of such collusion. It has been observed that the obligation of these sureties is to answer the decree of the Superior Court. The decree was for the payment of the money sued for. They contested their obligation in the Court below, and lost the case, and then, on appeal, lost it again.

Their liability was collateral to the main suit; but it was made by the terms of their obligation to depend upon its issue. They were not parties to the original litigation, any more than a surety on appeal is a party to the suit in the Appellate Court. They had no rights in Court as contesting parties. They assumed the responsibility of a contestation by other parties, and of the result of a controversy which they could not control. If the suit were mismanaged, if—for example, not otherwise—incompetent counsel had been employed, if the defendant neg-

lected or made default, or mismanaged his case, they had no right to retry it, or to deny the obligations of their undertaking. They chose, in plain language, absolutely to bind themselves in a given event; the event happened, and they are charged. To hold otherwise would be to hold that the surety in an appeal bond or undertaking, could demand a retrial of everything tried in the suit, or, what is the same thing, in effect, that a party giving such an obligation, could, in the name of the surety, hold himself practically absolved from the judgment, at least, without further trial. It would be the interest of a party to make mistakes and be guilty of negligence, since this would afford a pretext for opening the judgment and trying anew the suit decided against him. In order to hold so dangerous a doctrine, we would have to interpolate new conditions in the bond, and to expunge the terms therein written. We think the surety in such a bond stands in the shoes of his principal, so far as the definitive force of the judgment is concerned, subject to the single exception, that if the judgment be procured by collusion between the plaintiff and defendant, he is not bound.

Several other points we think equally fatal to the Respondents; but this one is enough. We think that the matter relied on in the bill could only be availed of by way of bill of review, and that this bill is fatally defective as such. But it is not necessary to elaborate this point, or to refer to any others; for what we have said is conclusive of the merits.

The order granting the new trial is reversed, and the decree dismissing the bill reinstated.

Ordered accordingly.

See *Pico* v. *Webster*, Sheriff, and his sureties, post.