# CHARLESTON

## STATE FOR USE &C. *v.* ABBOTT *et al.*

Submitted September 6, 1907.　　Decided December 10. 1907.

| | |
|---|---|
| 63 | 189 |
| f63 | 213 |
| 63 | 189 |
| 64 | 527 |
| 65 | 653 |

1. RECEIVERS—*Action on Bond—Conclusiveness of Adjudication.*

    A bond of a special receiver has the condition, "Now, if the said J. Herndon Abbott shall well, truly and faithfully discharge the duties aforesaid as set forth in said decree and pay over all monies that may come to his hands by virtue thereof as the court shall direct; then this obligation to be void otherwise to remain in full force and virtue." On settlement of his accounts before a commissioner under order of the court appointing him, he is found chargeable with a certain sum, and a decree of the court requires him to pay it to a special commissioner for disbursement. The decree is conclusive upon the sureties of the liability and its amount. (See now chapter 37, Acts 1907.) (p. 190.)

Error to Circuit Court, Wood County.

Action by the state, for the use of William Beard, special commissioner, against J. Herndon Abbott and others. Judgment for plaintiff, and defendant, Citizens' Trust & Guaranty Company of West Virginia, brings error.

*Affirmed.*

F. P. MOATS and A. G. PATTON, for plaintiff in error.

WILLIAM BEARD, for defendant in error.

BRANNON, JUDGE:

In the chancery suit of *S. B. Baker* v. *D. R. Tappan* in the circuit court of Wood county, J. Herndon Abbott was appointed as a special receiver to take charge of the Jackson Hotel in Parkersburg and continue the hotel business of the partnership of Baker and Tappan by running the business of the hotel. The suit was to settle the accounts of the partnership which had been formed between Baker and Tappan for the carrying on of the hotel business. The court required of Abbott a bond as special receiver, and Abbott gave a bond in which Citizens Trust and Guaranty Company of West Virginia was surety, in which the condition, after reciting that Abbott had been appointed special receiver to take possession of and manage the property of the firm of Baker and Tappan known as the Jackson Hotel, was that "if the said J. Herndon Abbott shall well, truly and faithfully discharge the duties aforesaid as set forth in said decree and pay over all monies that may come to his hands by virtue thereof as the court shall direct, then this obligation to be void otherwise to remain in full force and virtue." Later a decree in the case referred it to a commissioner in chancery with directions to state an account showing the property of the partnership and its debts. Later a decree ordered J. Herndon Abbott as special receiver to make a full and complete settlement of his account as such before a commissioner to whom the cause had been referred. The commissioner was directed to settle such accounts of the receiver and make a full and complete statement of all the acts of said receiver connected with said hotel Jackson, after notice to Abbott, which was given him. The commissioner made a settlement of the accounts of the said special receiver, and upon it a decree was made, by which it was adjudged, ordered and decreed that exceptions of J. Herndon Abbott be overruled, and it was found and decreed that there was in the hands of said receiver a "balance" of $6,659.57, and it was decreed that he was chargeable with that sum as receiver, and it was "further adjudged, ordered and decreed that the said J. Herndon Abbott, special receiver, do pay the said sum of $6,659.57,

with interest thereon from this date, to Wm. Beard, who is hereby appointed a special commissioner for the purpose of collecting and disbursing this money as hereinafter directed.'' Abbott having failed to pay said money to Beard, an action of debt was brought in the circuit court of Wood county upon the said receiver's bond, in the name of the State of West Virginia for the use of Wm. Beard, special commissioner, appointed as aforesaid, against Abbott and Citizens Trust and Guaranty Company, and the Trust Company appeared and pleaded condition performed. A jury tried the case and verdict and judgment were rendered against the defendant for $7,047.10, and the Trust Company has appealed the case to this Court.

On trial of the case, the Trust Company offered oral evidence to show that Abbott had complied with the conditions of the decree appointing him, and properly discharged his duty, and to show that the report of the commissioner of the settlement of the accounts of Abbott as special receiver was erroneous, and to enter into the said accounts and open up the same before the jury, and to show that the hotel had been conducted properly, and that the receiver had accounted for all money which came into his hands; in other words, the Trust Company proposed to make full defense so as to show that there was no liability against the receiver, and nothing due from him, as fully as could have been done in the chancery cause, and thus open up again the question of his liability. Say that such was the purpose of the questions; but in fact the expected answers do not appear. It does not appear what was proposed to be proven. The court refused to receive such defense, being of the opinion that the decree requiring Abbott to pay said sum to Beard was final and conclusive upon the surety in the receiver's bond. In the case of *State* v. *Nutter*, 44 W. Va. 385, we discuss the matter of the effect, whether only *prima facie* or conclusive, of a judgment against a principal as to the sureties. We there said that if the bond binds its makers to abide the result of certain litigation or to satisfy any judgment therein, a judgment against the principal is conclusive upon the sureties, so that they cannot contest that judgment, or reopen the question of liability. We there said that upon bonds merely stipulating for a faithful discharge of duty, a judgment against

the principal was, under Virginia law, only *prima facie* evidence of liability against the sureties; but where the bond stipulates for payment of any judgment in litigation, a judgment against the principal was conclusive. Unless that case is wrong, it settles the liability in this case against the Trust Company. We cited much authority in that case for this proposition of the conclusiveness of a judgment against the principal upon such bond as this. As this suit is hotly contested it may be well to supplement the authority there given. As there said whether such a judgment against the principal shall be held *prima facie* or conclusive depends on the character of the bond. There has been great conflict of authority as to whether such judgment is only *prima facie* or conclusive in the case of a bond simply stipulating for a faithful performance of official duties. I quote from Stearns on the law of Suretyship, sec. 192.

"Three distinct views are maintained upon the question of the effect to be given to a judgment against the principal in establishing a liability against the surety.

(a) That such judgment is not admissible against the surety.

(b) That a judgment against the principal is *prima facie* evidence agaist the surety.

(c) That such judgment is conclusive against the surety.

The first of these positions is supported by the somewhat plausible argument that an official bond is different in its terms from a bond of indemnity against a failure to perform a specific act, such as a bond that a principal will pay a certain sum of money or satisfy a judgment. A finding against the principal on default of either of these conditions might well be considered *prima facie* evidence against the surety, or even conclusive, since the surety agreed that the principal would do the particular things of which he has been adjudged in default." He then shows that as to official bonds in which the sureties merely stipulate that the principal will perform his duties the authorities conflict, some holding that the judgment against the principal is not only evidence against the sureties *prima facie*, but conclusive, while others hold that it is simply *prima facie* evidence of liability. Eminent authorities hold, even on bonds for mere faithful discharge of duty, such judgment conclusive, as in *Stoval* v. *Banks*, 10 Wall.

583, a decree finding a sum of money to be due from an administrator to distributees. So *Washington Ice Co.* v. *Webster*, 125 U. S. 426. But many cases hold that on such a bond the judgment is only *prima facie* against the surety, and may be overthrown by proof. The *Nutter Case, supra;* Stearns on Suretyship, sec. 193. I think the Virginia law is, that the judgment in such case is only *prima facie. Nutter Case, supra; Carr* v. *Meade*, 77 Va. 143. But we are not upon a bond conditioned only for faithful performance of duty. This bond not only covenants for faithful discharge of duties according to the decree, but it contains the additional covenant that the receiver should pay over all moneys that might come to his hands by virtue of the decree as the court shall direct. It contains both covenants. Now, while there is difference of decision in very many cases as to the effect upon sureties of judgments upon such ordinary official bonds, the authorities are overwhelming, and almost without exception, that upon such a bond as we have in hand the judgment is conclusive. Of course, I can cite for this proposition every one of the many cases above referred to holding a judgment against the principal, in an ordinary official bond with condition for faithful discharge of duty, to support the proposition that on such a bond as is before us the judgment is conclusive upon the sureties. I again cite the authorities in the *Nutter Case*, 44 W. Va. 385. I will venture the assertion that no authority (I have met none) holds that such judgment upon such a bond is not conclusive. That excellent work, Cyclopedia of Law and Procedure, Vol. 23, p. 1278, thus states the law as to such a bond: "Sureties on Bonds Given in Legal Proceedings. The surety on a bond given in the course of legal proceedings submits himself to the acts of the principal, and to the judgment, as itself a legal consequence, falling within the suretyship, and therefore is conclusively bound by a judgment against the principal, to the exclusion of all defenses which were or might have been set up by the latter." The well considered case, called a leading case in Stearns on Suretyship, sec. 192, note 154, *Pico* v. *Webster*, 14 Cal. 203, contains this language: "There can be no doubt, that where a surety undertakes for the principal, that the principal shall do a specific act to be ascertained in a given way, as that he will pay a judgment,

that the judgment is conclusive against the surety; for the obligation is express that the principal will do this thing, and the judgment is conclusive of the fact and extent of the. obligation. As the surety in such case stipulates without regard to notice to him of the proceedings to obtain the judgment, his liability is, of course, independent of any such fact. It is upon this ground that the liablity of bail is fixed absolutely by the judgment against the principal. But this rule rests upon the terms of the contract. In the case of official bonds, the sureties undertake, in general terms, that the principal will perform his official duties. They do not agree to be absolutely bound by any judgment obtained against him for official misconduct, nor to pay every such judgment. They are only held for a breach of their own obligations. It is a general principle, that no party can be so held without an opportunity to be heard in defense. This right is not divested by the fact, that another party has defended on the same cause of action and been unsuccessful. As the sureties did not stipulate that they would abide by the judgment against the principal, or permit him to conduct the defense, and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended, has no effect on their rights. They have a right to contest with the plaintiff the question of their liability, for, to hold that they are concluded from this contestation by the suit against the sheriff, is to hold that they undertook for him that they would be responsible for any judgment against him, which might be rendered by accident, negligence, or error, instead of merely stipulating that they would be responsible for his official conduct." A full note on bonds given in judicial proceedings, 83 Am. Dec. 381, will sustain this proposition. So will the note to the case of *Robinson* v. *Baskins*, 22 Am. St. R. 202. Great many authorities are there cited for the following proposition: "If a person enters into a contract of indemnity whereby he agrees to become responsible for the result of a litigation, or if, by operation of law, such a responsibility is cast upon him without any agreement, he will, in the absence of fraud or collusion, be conclusively bound by the judgment rendered, whether he had notice of the action in which it was entered or not." In that case the court held the law to . be thus: "1. Where the covenantor expressly makes his

liability depend on the event of a litigation to which he is not a party, and stipulates to abide the result; and 2, Where the covenant is one of general indemnity merely, against claims or suits. In cases of the first class the judgment is conclusive evidence against the indemnitor, although he was not a party and had no notice, for its recovery is the event against which he covenants. In those of the second class, the judgment is *prima facie* evidence only against the indemnitor, and he may be let in to show that the principal had a good defense to the claim." A judgment on a bond of indemnity is conclusive upon a surety. *Crawford* v. *Turk*, 24 Grat. 176. Freeman on Judgments, 4 ed., sec. 176, says that this rule is supported by "a vast preponderance of authority."

Counsel for the Trust Company cite us the case of *Thompson* v. *McGregor*, 81 N. Y. 519. That case was a receiver's bond stipulating only for faithful discharge of duty. The court held the judgment only *prima facie;* but the opinion distinctly says that it is clear law that where "besides the general covenant to faithfully execute the trust, there is also the special agreement to obey all orders of the surrogate. That the rule in these cases which makes the adjudication against the principal conclusive on the surety, is always based upon the special covenant which in terms submits the latter to the judgment or order of the court, indicates very plainly that the general words were not deemed sufficient, in and of themselves, to effect that result." The opinion concedes that on such a bond as we have the judgment is conclusive. It is strong authority for the position we take. I call attention to the fact that in Abbott's bond there are both covenants. In that case numerous New York cases are cited to sustain our holding. The case of *Kirker* v. *Owning*, 98 Fed. R. 499, cited by counsel, is not in point. It only holds that in a case where the receiver is appointed the court cannot enter a summary decree against the sureties, but that they are entitled to a hearing on their bond in a law action. It does not touch the effect of a judgment against the principal. The same may be said of *Thurmond* v. *Morgan*, 79 Va. 367. The argument and cases cited by counsel for the Trust Company are strong and apposite in cases of ordinary official bonds with conditions only to faithfully discharge duty; they relate to bonds of that kind; but as applied to a bond of the description involved in this case, they are inapplicable.

Chapter 37, Acts of 1907, gives right of defense to surety, notwithstanding judgment against the principal, thus changing the law very much; but that act was not in force when this judgment was rendered. It is an important act, and I therefore call attention to it.

We must therefore affirm the judgment.

*Affirmed.*