[No. 11731. Department One. August 13, 1914.]

JOHN COSTELLO et al., *Respondents*, v. ROBERT BRIDGES *et al.*,
*Respondents*, AND UNITED STATES FIDELITY &
GUARANTY COMPANY, *Appellant*.

UNITED STATES FIDELITY & GUARANTY COMPANY, *Appellant*,
v. KATHRINE COCHRANE, *as Executrix etc.*,
*Respondent.*[1]

INJUNCTION—BONDS—JUDGMENT AGAINST PRINCIPAL—LIABILITY—
NOTICE AND OPPORTUNITY TO DEFEND. A bond given by a surety in
an injunction suit, conditioned to pay "all damages that may be
awarded against the principal in any action hereafter brought to de-
termine the damages," contemplates an award against the principal
by judgment in litigation thereafter prosecuted, and is an under-
taking by the surety to abide and perform the judgment, hence the
surety is bound thereby though having no notice of suit against the
principal, nor opportunity to defend.

INJUNCTION — BONDS — CONDITIONS — CONSTRUCTION — DAMAGES
AGAINST PRINCIPAL — "ACTION" — COMMENCEMENT — AMENDMENT OF
COMPLAINT. Where plaintiffs brought an action to restrain a drain-
age district and its commissioners from trespassing on their lands
during the construction of a drainage ditch, and the defendant
filed a bond executed by a surety company conditioned that it
should pay all damages that might be awarded against it in any
action thereafter brought to determine the damages, and plaintiffs
later, after the commissioners had proceeded with the construction
of the work, filed an amended complaint in the injunction suit de-
manding a money judgment for damages, which was awarded them
with costs, the filing of the amended complaint was the bringing of
an action within the meaning of the bond, and it was not necessary
to institute a new action by service of summons and complaint in
order to bind the surety; since the course pursued was no material
departure from that contemplated in the bond.

SAME—EXTENT OF LIABILITY—"ALL DAMAGES." In such case, lia-
bility under the bond cannot be limited to damages suffered subse-
quent to its execution, where it was clearly intended that the bond
should cover all damages awarded resulting from the specified
cause.

INDEMNITY—AGREEMENT—PERSONAL LIABILITY OF OFFICIALS. An
indemnity agreement signed by commissioners of a drainage dis-

[1]Reported in 142 Pac. 687.

trict, without any mention of the drainage district or their official capacity, made as an inducement for the execution of a surety bond for the protection of landowners from damage occasioned through the construction of a drainage ditch, which recited that "we certify . . . and promise and agree to pay . . . and to keep indemnified the said company, etc." and which followed the application for the bond in which the drainage district was designated as applicant, is a personal undertaking rendering them liable over to the surety company upon judgment being rendered against it.

EVIDENCE—PAROL EVIDENCE TO VARY WRITING—OFFICIAL CAPACITY OF SIGNERS. An indemnity agreement, unambiguous on its face, showing a personal undertaking on the part of officials signing the same, cannot be varied by parol testimony to show that they intended signing in their official capacity.

Appeal from a judgment of the superior court for King county, Humphries, J., entered September 30, 1913, upon findings in favor of the plaintiff, in consolidated actions on contract, tried to the court. Affirmed in part and reversed in part.

*McClure & McClure*, for appellant.

*Vince H. Faben*, for respondents Costello *et al.*

*John W. Roberts*, for respondents Bridges *et al.*

ELLIS, J.—This in an action upon a bond, given by the defendants pursuant to a provision therefor in a decree rendered in the plaintiffs' favor in an action for injunction, as a condition for lifting or superseding the temporary injunction granted by that decree. Prior to April, 1905, drainage district No. 1 of King county, Washington, procured by condemnation a strip of land thirty feet wide through the plaintiffs' land as a right of way for the construction of a drainage ditch. When in April, 1905, work was begun upon the ditch, dirt and debris were thrown upon the plaintiffs' land outside of this strip. On April 14, 1905, the plaintiffs brought an action in the superior court of King county against the drainage district and its commissioners, Robert Bridges, Thomas Chapman and William Cochrane, for an

injunction restraining the defendants from going without the right of way in their operations, and from trespassing upon the plaintiffs' land. For convenience, that action will be referred to as the injunction suit. Pursuant to the necessary preliminary order, a hearing was had on April 18, 1905, and on April 22, 1905, a decree was entered restraining the defendants, until the further order of the court, from digging outside of the thirty foot strip, and providing that, before proceeding with the construction of the ditch through plaintiffs' land, the defendants should,

".  .  .  execute a bond with good and sufficient security in the sum of $2,500 running to the plaintiffs, conditioned that they shall pay all damages which may grow or arise out of the construction of said ditch by reason of throwing earth, debris and other material on the lands, outside of said strip, which bond is to be filed with the clerk of this court as soon as accepted."

On April 19, 1905, evidently in anticipation of the decree, the defendants in the injunction suit filed with the clerk of the court a bond as follows:

"Know all men by these presents, that Robert Bridges, Thomas Chapman and William Cochrane, as the board of commissioners of Drainage District No. 1 of King county, Washington, defendants in the above entitled cause, as principal, and the United States Fidelity & Guaranty Company, as surety, are held and firmly bound unto the plaintiffs in the above entitled cause and each of them, in the penal sum of twenty-five hundred dollars ($2,500) lawful money of the United States of America to be paid to the said plaintiffs or either of them, their or either of their heirs, executors, administrators or assigns, for which payment well and truly to be made the obligors hereby bind themselves and their and each of their successors or assigns, firmly by these presents.

"Sealed with our seals and dated this 18th day of April, 1905.

"The condition of the above and foregoing bond is such that,

"Whereas the above bounden principal and defendant Drainage District No. 1 of King county, Washington, by

and through its duly authorized board of commissioners, is constructing a drainage ditch through certain lands in the White River Valley, in King county, Washington, including plaintiffs' lands as described in the complaint herein, and

"Whereas in the above entitled matter, on the 18th day of April, 1905, on the hearing on the order to show cause heretofore issued herein on the 14th day of April, 1905, the above entitled court made an order requiring the defendant to give a bond running to plaintiffs herein in the sum of twenty-five hundred dollars ($2,500), conditioned that defendant should answer to plaintiffs for any damage which defendant might do to plaintiffs' lands by reason of the distributing of material excavated from that part of the said ditch extending through plaintiffs' premises, and outside of the right of way of the said drainage district,

"Now, therefore, if the above bounden principal, the above named defendant, shall pay all damages that may be awarded against it in any action hereafter brought to determine the damages, if any, done to plaintiffs' land by defendant in distributing the material on plaintiffs' land excavated from that part of said drainage ditch extending through plaintiffs' premises, then this obligation shall be void, otherwise to remain in full force and effect.

"Robert Bridges ⎫ Board of Commissioners of
"Thomas Chapman ⎬ Drainage District No. 1,
"William Cochrane ⎭ King County, Washington.
                "Principal.
"The United States Fidelity & Guaranty Company
    "By Henry C. Ewing and James B. Murphy, its attorney
in fact,                                  Surety."

Thereafter, the drainage district, through its commissioners, proceeded with the work. The original complaint in the injunction suit prayed only for injunctive relief. On June 26, 1905, the plaintiffs filed in that action their amended complaint, demanding a money judgment for damages. Issues were framed and a trial was had, resulting, on May 5, 1910, in a verdict and judgment in favor of the plaintiffs Costello and wife for $1,200 damages, caused by the defendants in distributing material on their land, and costs taxed at

$272.10. The United States Fidelity & Guaranty Company was never made a party to the injunction suit.

In March, 1911, the plaintiffs being unable to collect their judgment, brought this action against Bridges, Chapman and Cochrane, drainage district No. 1, and United States Fidelity & Guaranty Company, setting up the foregoing facts as a breach of the bond given in the injunction suit, alleging a demand for payment upon, and a refusal of payment by, the surety company, of the amount of the judgment rendered in the injunction suit, and praying for judgment against the defendants and each of them for $1,472.10, with interest from May 5, 1910. After the commencement of this action, William Cochrane died. Kathrine Cochrane, was appointed executrix of his estate. The plaintiffs presented their claim against his estate. It was rejected. They then filed a supplemental complaint setting up these facts in addition to those originally pleaded, and substituting the executrix as defendant in place of William Cochrane deceased. The surety company also filed with the executrix its claim for such damages, costs, expenses, attorneys' fees and other charges as it might be put to by reason of its execution of the bond in question. The claim was rejected. The surety company thereupon brought an action against the executrix. That action and the principal action of the plaintiffs herein on the bond were consolidated. The surety company demurred generally to the complaint, and also to the supplemental complaint. The demurrers were both overruled. The issues were made up and the consolidated actions were tried to the court without a jury. The court rendered judgment against the drainage district and the surety company, providing therein that, upon payment of the judgment by the surety company, it be subrogated to the plaintiffs' rights and have judgment over against the drainage district, and dismissing the consolidated actions as to the other defendants. The defendant United States Fidelity & Guaranty Company appeals.

On the main question of liability, the appellant argues that, under its bond, the surety company was not bound by the judgment against its principal, *first*, because it was not a party to, and had no notice of, the filing of the amended complaint upon which the judgment was rendered, hence had no opportunity to defend the action for damages on its merits; *second*, because by its bond it only undertook to answer for damages to be determined in an action *thereafter* brought, and that the filing of the amended complaint was not the bringing of a new action. A *third* contention is that, if the judgment be sustained against the surety company, that company is entitled to judgment over against respondents Bridges, Chapman, and Kathrine Cochrane as executrix of the estate of William Cochrane, deceased, in their personal capacities.

I. Abstractly stated, the first question is, can a surety be bound by a judgment against his principal, which was rendered in an action to which the surety was not a party and of which he had no notice, and, if so, when? Few questions can be found presenting a greater contrariety of decision. Many cases hold that such a judgment is *res inter alios* and inadmissible as evidence against the surety; many that it is admissible, but only *prima facie* evidence, and others that, when admissible at all, it is conclusive evidence of the amount of the liability of the surety. See *Ballantine & Sons v. Fenn*, 84 Vt. 117, 78 Atl. 713, 40 L. R. A. (N. S.) 698, and the extensive note thereto. Many of the decisions are of little value as precedents because of the few facts stated and their failure to disclose the terms of the bonds involved. We shall not attempt to harmonize the cases nor mark a way through the wilderness of conflicting opinion, since it seems to us that, after all that has been said upon the subject, the only true guide in each case must be found in the language and purpose of the given obligation. As said in the note above cited:

"The wording of the instrument is everything in this class of cases. There is nothing to prevent a surety from contract-

ing to be bound by a judgment against his principal, if he choose, and if that is the fair import of his agreement, he will be concluded by such a judgment. It is simply a case of what the surety has said he will do."

See, also, *Pioneer Sav. & Loan Co. v. Bartsch*, 51 Minn. 474, 53 N. W. 764, 38 Am. St. 511. Notwithstanding the wide diversity of opinion in other respects, it may now be considered a well established principle that, when the surety, either by the express terms of his agreement or by a fair and reasonable implication from the nature and intent of his obligation, has undertaken to pay the damages and costs which may be recovered against his principal, he is, in the absence of fraud or collusion or other equitable defenses, conclusively bound by the judgment, though he had no notice of the suit against his principal. *Chamberlain v. Godfrey*, 36 Vt. 380, 84 Am. Dec. 690. Note to *Charles v. Hoskins*, 83 Am. Dec. 380.

"Ordinarily a surety is not bound by judgment recovered against his principal when he has not been made a party to the suit or duly notified to come in and defend. But if the effect of the obligation of the surety is that he shall be bound by the result of litigation between other parties, he is, in the absence of fraud and collusion, concluded by such result." 1 Brandt, Suretyship & Guaranty (3d ed.), § 124.

"The condition of the bond sued on in this case is, in accordance with our statute, that 'the said Armstrong should faithfully administer said estate, account for, pay, and deliver all money and property of said estate, and perform all other things touching said administration *required by law, or the order or decree of any court having jurisdiction.*' This is the contract into which the securities have entered. There is no reason why parties should not be allowed to obligate themselves to abide by the result of a suit between others, and if the contract in this case can be fairly construed as imposing such an obligation, there is no hardship in enforcing it." *State v. Holt*, 27 Mo. 340, 72 Am. Dec. 273.

See, also, 2 Brandt, Suretyship & Guaranty (3d ed.), § 802; 1 Freeman, Judgments (4th ed.), § 180; *Riddle v.*

*Baker*, 13 Cal. 295; *State v. Abbott*, 63 W. Va. 189, 61 S. E.
369; *Town of Point Pleasant v. Greenlee & Harden*, 63 W.
Va. 207, 60 S. E. 601, 129 Am. St. 971; *Calhoun v. Gray*, 150
Mo. App. 591, 131 S. W. 478; *Griswold v. Hazard*, 28 Fed.
597; *Union Guaranty & Trust Co. v. Robinson*, 79 Fed. 420.

Turning to the bond here involved, we find that it is clearly
conditioned to pay "all damages that may be awarded"
against the principal "in any action hereafter brought to de-
termine the damages." Beyond question, the bond contem-
plated an award by judgment in litigation thereafter to be
prosecuted against the principal in any court having juris-
diction. A judgment against the principal was thus made a
prerequisite to any right of action against the surety. Had
the surety desired to litigate the issue of damages, it could
have preserved that right by a mere omission of the clause
above quoted. The bond was required by the court and in
its purpose was somewhat analogous to a supersedeas bond
on appeal. The bond itself was notice to the surety of the
exact issue which the obligee must litigate with the principal
in order to bind the surety. It was, in effect, an undertaking
to abide and perform the judgment in such litigation. The
surety did not stipulate for notice of, or for an opportunity
to be heard in that litigation. By the very terms of its con-
tract, the surety is bound by the judgment. The supreme
judicial court of Maine, in a case almost the exact analogue
of that here presented, has so held. A bond given as security
for damages thereafter to be adjudged in future condemna-
tion for a railroad right of way was conditioned as follows:

"Now if the said United States Construction Company
shall well and truly pay to the said Will Hunt any and all
land damages and costs of court adjudged by the county com-
missioners of Waldo county to be due said Will Hunt by rea-
son of the construction of said railroad across the land of
said Will Hunt, as aforesaid, within ninety days of said ad-
judication of said county commissioners, then this bond shall
be void, otherwise to be in full force."

The court said:

· "They [the sureties] claim, however, that they were not parties to that proceeding or judgment,—could not be heard upon *certiorari* or appeal, and hence are free to attack collaterally. But they did become parties to a written agreement with the plaintiff to guarantee to him the payment of what should be adjudged as due him from the party taking his land, the necessary and only proper party to the proceedings for such adjudication. They must have known, and hence agreed, that the proceedings to ascertain the amount due him should be against the party lawfully taking his land, or the Wiscasset and Quebec Railroad Company. They, therefore, by implication, agreed to be represented by that company in the proceedings and to abide by the judgment against it. They did not stipulate for notice to them, nor for an opportunity to question anything. They, in effect, agreed that an adjudication valid against the company should be valid against them. They cannot now, after such an adjudication has been obtained, rightfully insist upon more." *Hunt v. Card*, 94 Me. 386, 47 Atl. 921.

The appellant suggests that the *Hunt* case should be distinguished because there the surety stipulated to be bound by a judgment against a third party. It is not pointed out wherein that circumstance could make any difference either in the force of the contract or in the conclusive effect of the judgment. Of course it could make no difference.

Suppose the judgment in the original action for damages had been in favor of the drainage district. It would have been a complete bar to an action on the bond against the surety company. In any event, the judgment in that case fixes an absolute limit to the damages which can be recovered against the surety company. That was the measure of its undertaking. It would seem that, as a simple matter of correlation, where the judgment is against the principal, it should be presumptive evidence against the surety. *Stephens v. Shafer*, 48 Wis. 54, 3 N. W. 835, 33 Am. Rep. 793. As said in the case last cited:

"Holding the judgment against the principal alone presumptive evidence, as against the sureties, of the facts established by such judgment, can work no hardship so long as the right is reserved to them of showing that the defense in such action was not made in good faith, was fraudulent, collusive, or suffered to be obtained through mistake as to the facts."

No such defense was offered here.

II.  Was the filing of an amended complaint praying for an adjudication of the damages, the bringing of an action, within the meaning of the bond?  It is obvious that, under the original complaint in the injunction suit, which set up a course of conduct on the part of the district and its commissioners likely to result in damages, and prayed only injunctive relief restraining persistence in that course, but neither pleaded facts upon which a prayer for actual damages could have been predicated nor made any such prayer, the respondents could not have maintained that suit as an action for damages without an amendment.  The action was one in equity for an injunction; not one at law for damages. *Barber Asphalt Paving Co. v. Hamilton*, 80 Wash. 199, 141 Pac. 199.  Up to the time the bond was given, no action (using the words of the bond) had been "brought to determine the damages, if any, done to the plaintiffs' land by the defendants."  Plainly, the thing in contemplation of both parties to the bond was a future determination of the damages, if any, in any legal action thereafter taken or initiated to that end, not that a technically new action should be brought.  To construe the bond otherwise, would be to relieve the bondsman on the veriest technicality, and in a way that neither party had in mind when the bond was given.  Assuming, without deciding, that the amended complaint did not present a new, that is to say, an independent cause of action, in the broad sense, which, in a proper case, would permit the invocation of the statute of limitations, it did initiate the action as one to determine the damages, and, in that sense, was a new action; in fact, the first action taken for a determination of damages

by legal proceeding. Since, as we have held, the undertaking of the surety company was to abide the result of a judicial determination as against its principals in the bond in a future action, without any stipulation that it be made a party thereto or have notice of such action, it seems too plain for cavil that it could not make the slightest difference to the surety company whether that action was initiated by a new summons and complaint, seeking damages and docketed as a new action, or by an amended complaint seeking the same thing. The latter course met the only material condition of its liability, namely, an adjudication of the damages, as effectually as would the former. When regard is had to the substance of the thing rather than mere form, it is apparent that the course pursued was no material departure from that contemplated in the bond. The appellant was a compensated corporate surety. It cannot invoke the old rule of *strictissimi juris.* 32 Cyc. 306; *Pacific Bridge Co. v. United States Fidelity & Guaranty Co.,* 33 Wash. 47, 73 Pac. 772; *Cowles v. United States Fidelity & Guaranty Co.,* 32 Wash. 120, 72 Pac. 1032, 98 Am. St. 838; *Title Guaranty & Trust Co. v. Murphy,* 52 Wash. 190, 100 Pac. 315.

"The trend of all our modern decisions, federal and state, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of *strictissimi juris* prevails, as it always has; with respect to the other, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the courts generally hold that such a company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance." *Young v. American Bonding Co. of Baltimore,* 228 Pa. 373, 77 Atl. 623.

"Where the instrument is fairly susceptible of two constructions, one of which would leave the obligee without remedy and the other of which would carry out the evident pur-

pose for which the contract was required and entered into, the latter will be adopted rather than the former." 1 Brandt, Suretyship & Guaranty (3d ed.), p. 221, § 103.

See, also, *Atlantic Trust & Deposit Co. v. Laurinburg*, 163 Fed. 690; *Webster v. Dwelling House Ins. Co.*, 53 Ohio St. 79, 42 N. E. 546; 30 L. R. A. 719; *Philadelphia v. Fidelity & Deposit Co.*, (231 Pa. St. 208, 80 Atl. 62), Ann Cas. 1912 B. 1087, note.

The appellant also complains that a portion of the damage included in the judgment in the injunction suit was suffered prior to the giving of the bond, hence was not covered by it. We find no merit in this claim. A reading of the bond makes it clear that it was a *future award* for "all damages," not an award for *future damages* which the bond was given to secure. It was clearly intended to cover any award for all damages resulting from the specified cause. *Commonwealth v. Fidelity & Deposit Co.*, 224 Pa. 95, 73 Atl. 327, 132 Am. St. 755.

III. Are the respondents Bridges, Chapman and Kathrine Cochrane, as executrix of the estate of William Cochrane, deceased, liable over to the bonding company? As an inducement to the giving of the bond, the following indemnity agreement was given:

"We certify that the answers given to the foregoing interrogatories are true, and in consideration of the United States Fidelity and Guaranty Company consenting or agreeing to execute or guarantee the bond herein applied for, we do hereby covenant, promise and agree to pay the following premium or fees agreed upon, to wit: $12.50 per annum, and at the termination of the case, to furnish said company with satisfactory and conclusive evidence that there is no further liability on said bond, and to indemnify, and keep indemnified, the said company from and against any and all loss, cost, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said company shall or may, for any cause at any time, sustain, or incur, or be put to, for, or by reason or in consequence of said company having entered into or executed said bond.

"In testimony whereof — hereunto subscribe — name and affix — seal this 18th day of April, A. D. 1905.

| "Witness: | | Robert Bridges | (Seal) |
|---|---|---|---|
| "J. A. Cathcart | | Thos. Chapman | (Seal) |
| | | "William Cochrane | (Seal) |
| | | "Signature of Applicant." | |

While it is true, as urged by counsel, that this follows the application in which drainage district No. 1 is designated as the applicant, and the drainage district was the real principal in the bond, it does not follow that the indemnity agreement was not the personal undertaking of the persons who signed it as individuals, without any designation of their official capacity. It may be that the surety company questioned the power of the commissioners to bind the district by such an agreement, and, for that reason, insisted upon their personal undertaking. Whatever the reason, they did, in fact, execute the agreement, unambiguous on its face, personally promising and agreeing to pay the premiums and to keep indemnified the company against any and all loss, etc., in consequence of its execution of the bond. Their language is "we certify . . . and promise and agree to pay . . . and to keep indemnified the said company, etc." Every undertaking is referable to the first word "we." Nowhere in this undertaking, from certificate to promise and signature, is there any mention of the drainage district or of the official capacity of the signers. There being no ambiguity in the instrument, the court committed error in admitting parol testimony to show that the persons signing this instrument intended to sign in some other capacity than that in which they did sign. Ambiguity can no more be created by an offer to prove it than by pleading it. We said in *Toon v. McCaw*, 74 Wash. 335, 133 Pac. 469:

"Ambiguity cannot be created by pleading it. It must appear in the instrument itself. It will be observed that the defendants jointly promised to pay the note. There is nothing upon the face of the note to indicate that it was a note of the corporation only, or that it was other than the joint obliga-

tion of all of the makers. The language of the note is 'we promise to pay.' This language is repeated in reference to the attorney's fee."

See, also, *Daniel v. Glidden,* 38 Wash. 556, 80 Pac. 811. This is not a rule peculiar to negotiable instruments. It is but a phase of that general rule applicable alike to all written contracts complete and unambiguous on their face, that they cannot be varied, contradicted or enlarged by parol testimony.

"It is a universal rule that the written contract itself must be resorted to as the source of authority for receiving parol evidence, and where, as here, the contract shows a deliberate agreement complete in itself and formally executed, parol evidence to enlarge its scope or vary its terms is never admissible." *Allen v. Farmers & Merchants Bank of Wenatchee,* 76 Wash. 51, 135 Pac. 621.

The following are cases closely parallel with that here presented: *Sharp v. Smith,* 32 Ill. App. 336; *Wing v. Glick,* 56 Iowa 473, 9 N. W. 384, 41 Am. Rep. 118; *Matthews v. Jenkins,* 80 Va. 463; *Tileston v. Newell,* 13 Mass. 406; *Potts v. Henderson,* 2 Ind. 327.

The appellants are entitled to judgment over against the respondents Bridges, Chapman, and Kathrine Cochrane as executrix of the estate of William Cochrane, deceased. The cause is remanded with directions to so modify the judgment.

It appears from a motion filed in this court that, in entering the judgment in the court below, an error was made in computing interest. A form of order for correction, approved by the attorneys for all of the parties, has been submitted. This order will be transmitted with the remittitur to the trial court so that the judgment may be corrected accordingly.

CROW, C. J., MAIN, CHADWICK, and GOSE, JJ., concur.