OLIVE SIMPSON, plaintiff in error, vs. WM. H. ROBERT and wife, defendants in error.

[1] Although the words "*preceeding*" and "*aforesaid*" mean generally next before, and "*following*" next after, yet a different signification will be given to them if required by the context and the facts of the case.

[2] A mortgage given by a principal to his bail, to indemnify him against loss on account of his liability in case of forfeiture, is valid.

[3] The condition of the bail bond, that the principal shall attend at a certain term of the Court, and from term to term thereafter until discharged by leave of the Court, is good.

[4] The committing magistrate may authorize the Sheriff to imprison the offender until he enters into a recognizance for his appearance to answer for the offence, and his bond taken by the Sheriff, is legal.

[5] An indigent debtor has no power to encumber his property so as to divert that portion exempt by law for the support of his wife and minor children.

Injunction and Receiver. Decision at Chambers, by Judge CLARK. September 1866.

The defendants in error filed their cross bill of injunction, praying for a Receiver, against the plaintiff in error, alleging that they purchased, at the price of one hundred and fifty dollars, from one Jordan Williford, the growing crop of one Tillman J. Simpson, on 30 acres of land, more or less, consisting of corn, peas and potatoes. The crop was growing

on land rented by Simpson from Irwin. Williford took a written transfer of the crop from Simpson. The consideration was that Williford stood security on the bond of Simpson to appear at Court in July, 1866, in Lee county, to answer the charge of simple larceny. The transfer to be void if Simpson kept the condition of this bond. Simpson did not appear. On the contrary, very soon after the date of the bond he ran away. Defendants in error paid the purchase money by a draft drawn on Hardeman & Sparks, of Macon, in favor of Newson, who is Judge of the County Court of Lee, to be by him paid over to Williford. The draft was promptly accepted and is still in the possession of Newson. Williford, being satisfied, put defendants in error in possession of the premises, to enable them to control the growing crop. The plaintiff in error (wife of Simpson) was apprised of the nature and object of the whole transaction, assented thereto, and only requested to be allowed to continue to occupy the house.

Defendants in error remained in peaceable possession, working and taking care of the crop until about the 25th of August, 1866, when they were served with an injunction, granted by the Judge of the Pataula Circuit, without requiring a bond, and without notice, at the instance of the plaintiff in error, enjoining them against taking possession or in any wise interfering with the crop. Plaintiff in error charged in her bill that the appearance bond of Simpson was void; that she was very poor, and if the crop is taken from her she and her six children will be left destitute.

Defendants in error further charge, that plaintiff in error is wasting the crop, and that she is totally insolvent.

The injunction was granted and a receiver appointed, and this is the error alleged.

FRED. H. WEST, for plaintiff in error.

GEO. KIMBROUGH, for defendant in error.

LUMPKIN, C. J.

This case originated in this wise: Tillman J. Simpson was arrested for simple larceny, in Lee county, and committed to Dougherty county jail, on account of the insufficiency of Lee county jail. Jordan Williford became his bail, and for this purpose entered into a recognizance to the Sheriff of the county that he would appear at the semi-annual session of the County Court, to be held on the 4th Monday in July, 1866, and from Term to Term, to abide by whatever was adjudged against him, until discharged by the Court.

To induce Williford to become his bail, he executed a mortgage to Williford on his growing crop. This instrument was transferred to Roberts and wife. Mrs. Simpson filed a bill of injunction to stop the parties from any interference with her property under this contract. Roberts and wife filed a cross bill, praying the appointment of a receiver to take charge of the property until the litigation should be settled, and it is to this action of the Court that exceptions are taken.

It is insisted that the foundation of this proceeding is illegal and void, and that consequently the whole superstructure erected upon it must fall to the ground. It is contended that the bail bond is void for several reasons: 1st, That the Sheriff, as such, had no right to take it, the obligor being in the custody of the law, where he had been confined by the proper authority. 2. The offence charged was simple larceny, the committing magistrate might, if he thought proper, direct him to be kept in jail for safe-keeping, until he could give bail. We see no objection to such a proceeding. 3. Again, it is said, that the bond imposes a condition not required by law, and therefore it is void. We do not appreciate this objection. He is required to appear from Term to Term till discharged by the Court from the offence. Wherein can it be said to be more onerous than if he was bound to appear at the next Term and not to depart the Court until authorized to do so?

There is a little confusion in the wording of the bond, arising from the fact that the prisoner was committed to the jail in Dougherty county, owing to the insufficiency of the jail in Lee county, and the word " *said*" grammatically applies to Dougherty instead of Lee county. But this is explained by the facts of the case, and the context.—*Code, Sec. 6, Par.* 11.

It is alleged that the mortgage lien, given by Simpson to Williford, is void, and could vest no title in the latter which he could transfer to Roberts and wife; and this because it is contrary to public policy, to allow a party to substitute a property security to enable him to escape an offence. We are not prepared to sustain this doctrine. That a principal should, in case of default, not indemnify his bail against the effects of his forfeiture or failure to attend and answer for the crime, has never been doubted by any body, and no authority is offered to support the position.

But, it is said, admitting both the bail bond and the lien to be good, the latter does not authorize Roberts and wife to take possession of the crop and deprive the family of Simpson from enjoying it. We look upon the instrument made by Williford to Roberts and wife, as a mortgage merely. It is denominated a *lien* twice upon the face of the instrument.

While Roberts and wife had no right to appropriate the crop and other property to themselves, they had the right to have it protected, and hence the appointment of a Receiver for this purpose was proper. But have not Mrs. Simpson and children rights secured to them by law, and of which no lien given by her husband can divest them? We think so, clearly, and in this way she can secure all the benefits that are sought to be accomplished by this litigation; and while we shall affirm the judgment of the Chancellor appointing a Receiver, we shall instruct him, by a decree in Chambers, to be granted at once, to direct his Receiver to appropriate so much and such parts of this property to the wife and children of this indigent man as is allowed by law for this

purpose.—*Code, Sections* 2013 *and* 2020.   The husband cannot by an *encumbrance* of any kind defeat his wife's claims.

The judgment affirmed, with instructions.