## UNITED STATES *v.* SIMMONS.

*(Circuit Court, S. D. New York.* September 1, 1891.)

BAIL—INDEMNIFIED SURETIES.
  A bail-bond, pending appeal from a conviction in a criminal case, should not be accepted where the sureties thereon have indemnified themselves by taking bonds from the accused and others; and the fact that such bonds are against public policy, and could not be collected, is immaterial.

At Law. Indictment of James A. Simmons for embezzlement.

*John J. Joyce,* for defendant.

*Edward Mitchell,* U. S. Dist. Atty., and *Maxwell Evarts,* Asst. U. S. Dist. Atty.

BENEDICT, J. The above defendant, having been convicted of aiding and abetting Peter J. Classen, president of the Sixth National Bank, in embezzling the funds of that institution to a large amount, was on the 26th day of June, 1891, sentenced to be imprisoned for a term of six years. Thereupon, by virtue of the recent statute providing for appeals to the circuit court of the United States in criminal cases, the accused sued out a writ of error from the supreme court of the United States, and upon such writ obtained a *supersedeas* and stay of execution pending his appeal. Afterwards an order was made admitting him to bail in the sum of $50,000, and now, on the 25th day of August, he presents for approval as his bail, pending his appeal to the supreme court of the United States, the following named persons: Cornelius H. Tallman and Jacob B. Tallman. The district attorney objects to the acceptance of the above persons as bail for the accused, upon the ground that it appears. by an examination of the proposed bail that by an instrument in writing signed by the defendant, and also by Siegmund T. Meyer, Aaron Raymond, Kaufman Simon, and Helen E. Howell, the persons proposed as bail have been indemnified against any loss or damage by reason of their becoming bail for the accused in case he fails to appear to undergo his sentence in the event of his appeal being unsuccessful. The precise question thus presented is new in this court. It is said to have been decided elsewhere in accordance with the contention of the district attorney, but I have not been able to find the point adjudged in any reported case. Contracts indemnifying bail in criminal cases have, however, on more than one occasion, been before the courts, and by the courts they have been declared to be illegal and against public policy. *Herman v. Jeuchner*, 15 Q. B. Div. 561, was an action to recover back bail money deposited with the bail to indemnify the bail against loss by reason of having signed a bail-bond for the good behavior of the plaintiff. The court refused to permit a recovery; and, speaking of the contract of indemnity, BRETT, J., says:

"It is illegal, because it takes away the protection which the law affords for securing the good behavior of the plaintiff. When a man is ordered to find bail, and a surety becomes responsible for him, the surety is bound at his peril to see that his principal obeys the order of the court,—at least, this is the rule in the criminal law; but, if money to the amount for which the surety is bound is deposited with him as indemnity against any loss which he may sustain by reason of his principal's conduct, the surety has no interest in taking care that the condition of the recognizance is performed."

In *Jones v. Orchard*, 16 C. B. 614, MAULE, J., says:

"The public has a right that the bail should be persons of ability and vigilance sufficient to secure the appearance, and prevent the absconding, of the delinquent."

In *U. S. v. Ryder*, 110 U. S. 729, 4 Sup. Ct. Rep. 196, where it was held that the sureties on a recognizance given to the United States are not entitled on a forfeiture thereof, and, upon payment of the amount secured, to be subrogated to the rights and remedies of the United States against the principal, the doctrine that a contract to indemnify bail is

contrary to public policy is approved by the supreme court of the United States; and it is said to permit sureties to be subrogated would be to aid the bail to get rid of their obligation, and to "relieve them of the motives to exert themselves in securing the appearance of the principal." In none of these cases was the precise question under consideration decided, but the reasons given for the decisions referred to are equally valid reasons for a decision in this case that persons indemnified by the accused ought not to be accepted as bail for the accused after conviction; for if, as these cases hold, the contract to indemnify bail in a criminal case is against public policy, it follows as a matter of course that no court can be asked to approve and give effect to such a contract by accepting persons who propose themselves as bail in pursuance of such a contract. The cases that I have referred to seem to me, therefore, to furnish authority for a decision adverse to the approval of the sureties presented by the accused.

Upon principle, also, the approval of indemnified persons as bail in a case like this should not be granted. Were it not for rule 36 of the supreme court of the United States, it might well be argued that no bail should be accepted from a person already convicted under sentence to be imprisoned for a term of six years. But assuming, as must be assumed, that, by virtue of the rule referred to, the accused is entitled to be admitted to bail, it is nevertheless the duty of the court to exercise extreme caution, both as to the amount of the bail and the persons proposed as sureties, because of the extraordinary temptation to flee that will be presented to the accused in the event of his appeal proving unsuccessful, when flight alone will save him from incarceration in the penitentiary for a term of six years. Surely it would show a lack of caution to accept as bail, under such circumstances, persons who have taken from the accused a bond of indemnity, whereby, so far as within their power, they have relieved themselves from all responsibility for the accused. Bail, when accepted in criminal cases, become in law the custodians of the prisoner for the court. They have the right and are charged with the duty to arrest the prisoner in case he contemplates flight. The court looks to their vigilance to secure the attendance and prevent the absconding of the delinquent. The object of accepting them as bail is not to enable the prisoner to escape punishment by paying money to his bail, but to secure his appearance at the proper time, in order that he may receive punishment. When persons offering themselves as bail have entered into a contract of indemnity with the accused, they have endeavored to relieve themselves of responsibility for him. It is true that the contract of indemnity which they have secured will not be enforced by the courts, but nevertheless they have made themselves parties to such a contract, they stand before the court relying upon the performance of the contract of indemnity by the defendant, and by taking such a contract they have disclosed an intention to avoid, so far as in them lies, any pecuniary loss on their part, in case the accused should flee, and to deprive themselves of any motive for vigilance to prevent his flight. The possibility of flight by the defendant has been a subject of contem-

plation by them, and they have done all that they can do to enable him to flee without notice to them, and to relieve him from all sense of obligation towards them, to avoid making them responsible upon their reognizance. Not only have they contemplated the possibility of flight by the prisoner, but they have also contemplated a defense on their part to an action by them on the recognizance; for, while the amount of their proposed obligation as bail is $50,000, they have taken a bond of indemnity, signed by the accused and by four other persons, each bond in the sum of $50,000, which bond in terms provided for their costs and counsel fees. It seems to me entirely plain that it is my duty to decline to accept a bail so situated in a case like this.