_aff'd_ 158 N.Y. 351

12   545
158a  351

DENNIS MALONEY, Respondent, _v._ SAMUEL NELSON, Appellant, Impleaded with Others.

_Bond and mortgage given by one surety to indemnify another as bail — it is not against public policy — judgment absolute of the Court of Appeals in an action prematurely brought is not a bar to a subsequent suit._

It cannot be said to be the policy of the State of New York that a personal liability must attach to the bail in criminal cases, and that a contract which in any manner relieves the bail from such liability is necessarily illegal.

A bond and mortgage given by one about to become a surety upon a bail bond, to indemnify the other surety against the failure of the principal to appear, is not void as against public policy nor wanting in a sufficient consideration to sustain it.

Where, in an action to foreclose such bond and mortgage brought after the forfeiture of the bail bond and before the mortgagee has been compelled, as surety, to pay the amount of the bond, a judgment for the plaintiff has been reversed at the General Term on the ground that no recovery could be had therein until the plaintiff had actually paid the money, and such order of reversal has been affirmed by judgment absolute of the Court of Appeals under the usual stipulation required on an appeal from an order granting a new trial, such judgment absolute is not a bar to another action of foreclosure brought after the money has been actually paid by the surety and mortgagee.

APPEAL by the defendant, Samuel Nelson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 2d day of May, 1896, upon the decision of the court rendered after a trial at the New York Special Term.

_W. H. Newman_, for the appellant.

_L. Laflin Kellogg_ and _Alfred C. Petté_, for the respondent.

RUMSEY, J.:

The action was brought against the appellant with other defendants to foreclose a mortgage, and upon the trial the plaintiff suc-

ceeded. From the judgment entered after that trial, the defendant Nelson, who gave the mortgage, appeals. For the purpose of sustaining his contention upon the appeal he makes several objections, which will be considered in their order.

In the first place he says that the contract was void as against public policy. The facts are that, just before the giving of the bond and mortgage, one O'Brien had been arrested for a felony and held to bail in the sum of $10,000. The defendant Nelson intended to go upon his bond, but it was necessary to procure another surety, and by way of inducing him to do so, Nelson offered to give him this bond and mortgage as indemnity for any liability which he might incur, whereupon he became one of the bail for O'Brien, and then this bond and mortgage was given by Nelson. The indemnity bond recited that Maloney had signed the bail bond for O'Brien as one surety in the penal sum of $10,000, with the usual conditions for the appearance of O'Brien, and then continued : "Now, therefore, if there shall be no default in said bond or recognizance so signed by said Maloney, then this obligation to be void ; otherwise to remain in full force and virtue." The bond and mortgage, therefore, as it will be seen, were made by one surety upon the undertaking of bail to indemnify the other surety against the failure of the principal to appear.

The claim of the defendant is that such a contract is void as against public policy. His contention is substantially that the object for which bail is required is to assure the appearance of the prisoner to answer to the charge against him ; that by accepting the custody of the prisoner he is transferred from the State to the sureties upon the recognizance, who, because of the pecuniary liability resulting from his escape, have a direct personal interest in securing his appearance ; that this personal interest is diminished or taken away if they are permitted to indemnify themselves against the loss resulting from his failure to appear, and, therefore, such an indemnity impairs the effect of the contract which they have made. A contract is said not to be enforcible, because it is against public policy, either because it is directly in violation of some provisions of law, or because the courts can see that its necessary result is to undermine public morals ; to endanger the public health or public safety ; to prevent competition at judicial sales, or to improperly influence

legislation or the action of public officers for the administration of justice, or to nullify the policy of the law. Unless something of this kind can be necessarily predicated of a contract it does not interfere with the broad liberty which every person has to make such agreement as he sees fit, and a contract thus made will be enforced by the courts. The question whether such a contract as this one is void has been presented to the courts of England in several reported cases, but in only one of them was it a necessary point to be decided in the case. In the case of *Jones* v. *Orchard* (16 C. B. 614) the court consider the question somewhat, but leave it undecided, saying simply that while it was inclined to consider the point well taken, it was not necessary to come to a decision upon it. In *Cripps* v. *Hartnoll* (4 B. & S. [Q. B.] 414) the action was upon a contract of a third person to indemnify the surety upon a bail bond. The question decided was simply that such a contract was not void by the Statute of Frauds, and the plaintiff was permitted to recover upon the contract without any reference to the question whether it was void as against public policy. In *Herman* v. *Jeuchner* (15 Q. B. Div. 561) the plaintiff had been required to give a bond in the penalty of fifty pounds sterling, with a surety, for his good behavior for two years. In order to induce defendant to give security for him, plaintiff deposited with the defendant the penalty of the bond. He afterwards sued to recover the penalty again, and the defense was that the agreement was void as against public policy, and for that reason the court would not aid either of the parties and so permit the plaintiff to recover the money which he had deposited in part performance of the illegal contract. The court adopted this view of the case and refused to permit the plaintiff to recover. The ground upon which the case was decided seems to be that the object of the law in requiring a surety upon a recognizance, was to obtain the personal responsibility of the surety, and to require him to exercise it at the peril of pecuniary loss if he did not, and that his obtaining an indemnity removed the inducement for his personal vigilance and, therefore, deprived the State of the security which it was intended to have for the performance of the law by the principal.

In this country the point has been taken in several cases, but in none of them does it seem to have been decided or even necessary

to the decision of the case. In *United States* v. *Simmons* (47 Fed. Rep. 577) the judge refused to approve of a bail bond, where it appeared that the sureties had been indemnified by the accused and others, for the reason that such a contract of indemnity was illegal, giving substantially the same reason as that suggested above.

In *United States* v. *Ryder* (110 U. S. 729) the question was discussed but not decided, because a decision upon that point was not necessary. It was, however, suggested there that a contract of indemnity by the principal to the surety was illegal. In *Anderson* v. *Spence* (72 Ind. 315) the only point decided was that a contract of indemnity, made by a party other than the accused, was not within the Statute of Frauds, and, therefore, that a parol contract was valid.

The question seems to have been presented in *Simpson* v. *Roberts* (35 Ga. 180), and it was decided there that the contract was valid.

No decision upon the subject is to be found in the courts of this State. In view of the fact that contracts for the indemnity of sureties upon bail bonds have been frequently enforced in the courts, the fact that their validity has not been successfully attacked is of itself strong evidence that they have been presumed to be legal. In fact, there is no case holding that a contract made by a third party to indemnify a surety upon a recognizance is illegal, but all such contracts have been sustained. The only case in which there has been a suggestion that such contracts are invalid is where they have been made by the principal himself. It is not perceived that there is any valid distinction in principle between a contract made by the accused and one made by somebody else for his benefit, but, nevertheless, that distinction seems to exist in the books, and to result in contracts on the one hand being held valid, and on the other hand being disapproved.

In this State, however, it is quite clear that there is no public policy which condemns such contracts. The Legislature has regulated, by statute, the giving of bail in criminal cases, and if the sureties were not to be permitted to indemnify themselves, it is quite probable that the Legislature would have said so. Not only have they not said so, but it is not necessarily to be inferred from the present condition of the law, that the contract of bail need not depend upon the personal responsibility of the surety, because the

Legislature permits bail to be given not only by a recognizance signed by sureties in the old manner, but also by the deposit of money by the accused. Such a mode of giving bail necessarily does away with any idea of personal liability, and it is fairly to be inferred that such personal liability was not regarded by the Legislature as of such importance that it was to be insisted upon in all cases. It is not, therefore, necessarily a part of the policy of the law that such liability must exist, and a contract which relieves the bail from that liability is not necessarily illegal.

The next point made by the defendant is that this question has already been decided in his favor by a judgment of the Court of Appeals. The facts bearing upon that question are that after the escape of O'Brien and the forfeiture of his bail bond, and before the plaintiff had been called upon to pay any money, he brought an action to foreclose the mortgage, basing his right to do so solely upon the fact that he had become liable to pay, although it was conceded that he had not yet paid anything by reason of having signed the bond. At Special Term he recovered, but the judgment was reversed at General Term and a new trial ordered for the sole reason that the bond and mortgage being simply a contract for indemnity there could be no recovery upon it until the plaintiff had been actually damnified by the payment of the money and, therefore, the action was prematurely brought. From the order granting a new trial the plaintiff appealed to the Court of Appeals, giving the usual stipulation for judgment absolute in case the order was affirmed by the Court of Appeals; and thereupon, after affirmance, judgment absolute was entered against him in that action dismissing the complaint. The defendant now relies upon that judgment as an adjudication here against the right of the plaintiff to recover in any event. The rule is that where the plaintiff has been defeated in an action because the first suit was prematurely brought, the judgment entered in that suit is not a bar to another action brought after the right of action has accrued. (*Converse* v. *Sickles*, 146 N. Y. 200, 207; *Rose* v. *Hawley*, 141 id. 366.) The defendant does not dispute this proposition, but he says that the adjudication becomes a bar in this case because of the stipulation of the plaintiff that if a new trial was ordered in that action judgment absolute might be entered against him, and his claim is that that judgment took away his right

to recover not only in the action in which the judgment was entered, but upon every other possible state of facts which might be presented with regard to the same bond and mortgage. The stipulation was required by the statute. It is contained in the notice of appeal and is substantially that the plaintiff stipulates and agrees that if the order of the General Term granting a new trial shall be affirmed, judgment absolute shall be rendered against the plaintiff in favor of the defendant.

It will be noticed that this stipulation is made in the action in which the appeal is taken. It refers simply to that action, and the effect of it is only to give the respondent in whose favor the new trial was ordered the same judgment without a new trial which he would have if a new trial had taken place in pursuance of the order of the General Term. It is the same thing, in effect, as though, upon the new trial, the plaintiff had said in open court that, in view of the law laid down by the appellate court, he could not recover a judgment in the action in which the order was made, and for that reason consented that judgment might be taken against him, so that in any event the force of adjudication after a judgment absolute upon such a stipulation depends upon the facts upon which the judgment is ordered; and the fact that the judgment comes by stipulation makes no difference with the binding effect of the judgment which is finally entered. It is quite true that where such stipulation has been given, the courts say that if the order for a new trial is affirmed, the judgment entered upon the stipulation finally determines the whole right of the defeated party; and that, although he may have had a good cause of action, he loses it because of his stipulation, although the new trial may have been ordered upon a point which was not necessarily decisive of it. It will appear from those cases, when they are examined, that the court was speaking simply with reference to the facts stated in the pleadings in the particular case, and the remark was made, not by way of deciding upon the rights, but simply by way of admonition to the appellant as to the risk which he took in entering into such a stipulation, where the new trial might have been granted for an error of the court which did not go at all to the merits of the case. None of the cases hold or suggest that the judgment entered upon such a stipulation is to be construed as finally disposing of any rights which

were not necessarily involved in the pleadings set out in the particular case, or which was not in existence at the time the first action was commenced. To be sure, in the case of *Rose* v. *Hawley* (*supra*) this question was presented to the Court of Appeals, which declined to decide it because it was not necessary to that case. But there is nothing in the opinion from which it can be inferred that the court would have decided it in favor of the defendant's contention here, and we can see no ground upon which that contention can be maintained.

The third point made by the defendant is that the bond and mortgage was without consideration. That point, however, is disposed of by the learned trial judge, who finds, upon sufficient evidence, that, before the recognizance was given, it was agreed that Nelson should give indemnity to Maloney as a condition of his going upon the bond.

This disposes of all the objections taken by the defendant to the judgment, and it necessarily results that the judgment must be affirmed.

Van Brunt, P. J., Williams, Patterson and Ingraham, JJ., concurred.

Judgment affirmed, with costs.