# CHARLESTON

## CARR v. DAVIS.

Submitted June 10, 1908.   Decided December 15, 1908.

1. BONDS—*Legality of Condition—Public Policy.*
   A bond of indemnity given by a person under charge of felony to indemnify his bail in a recognizance for his appearance to answer the charge is not void as against public policy. (p. 523.)

2. FRAUDULENT CONVEYANCES—*Persons Entitled to Assert Invalidity.*
   A bail in a criminal recognizance against whom an award of execution upon the recognizance has been made, and to whom a bond has been given to indemnify him against all loss or damage which he might sustain on account of having signed the recognizance, may file a bill in equity, before payment of the recognizance debt, to set aside a deed made by the obligor in such indemnity bond as made with intent to defraud him as a creditor. (p. 526.)

3. SAME—*Creditors.*
   Any one who, but for a deed made to defraud creditors, would have right to subject the property to his demand, is a creditor entitled to sue in equity to set it aside under chapter 74, of the Code. (p. 527.)

4. SAME.
   Code, chapter 74, avoiding conveyances made to defraud creditors embraces as creditors, as a general rule, all persons who have a valid cause of action. (p. 527.)

5.  Principal and Surety—*Right of Surety to Compel Principal to Pay.*
    Sureties.   As to their right, in equity, to compel principal to pay
    for their relief.   (p. 528.)

Appeal from Circuit Court, Harrison County.

Bill by William H. Carr against Edward R. Davis and
others.   Decree for defendants, and complainant appeals.

*Reversed.*

E. G. Smith, for appellant.

W. Scott, for appellees.

Brannon, Judge:

Sutton was under charge of felony.   He gave a recogniz--
ance to answer the charge.   Carr acknowledged the
recognizance as bail for Sutton.   Carr took from Sutton,
Davis and others a bond of indemnity to indemnify Carr
against loss by reason of such recognizance.   Sutton failed
to appear.   An execution was awarded by the circuit court.
against Carr alone upon said recognizance.   Carr brought.
this chancery suit against Davis, upon said indemnity bond,
to set aside a conveyance of real estate by Davis as made to.
defraud creditors, among them Carr.   The circuit court.
dismissed the bill on demurrer.

The question is, Is the bond of indemnity valid so as to.
create an enforceable demand in favor of Carr?   It is said
that the bond is void as against public policy in this—that.
it tends to make the bail less watchful to prevent the
escape of the accused from trial than he would be, if not in-
demnified; that if not indemnified, the bail would
keep strict watch on the accused, [1] and on suspi--
cion of escape, to save himself from loss, would arrest the
accused and return him to prison to stand trial;.
but being indemnified, he does not care.   The authorities.
are divided upon the question.   None are binding upon us.
No West Virginia or Virginia case sets the rule for us.   We
must choose between conflict among cases not binding us,
and adopt the rule we think most reasonable and useful.   Force
there is, we must say, in the argument above stated that.
indemnity tends to make the secured bail indifferent; but
that rule would make it sometimes out of the power of the·

.accused, innocent or guilty, to give bail, and require him to .languish, perhaps die, in prison. It is settled, it seems, that when the bail pays a recognizance the law does not imply a promise by the accused to re-imburse the bail. Otherwise in South Carolina. *Reynolds* v. *Harrol*, 2 Strobh. 87. The books say that this is because there is no debt. Sometimes, often indeed, the very purpose on the part of prisoner and bail in seeking bail ·is to give the prisoner chance to escape. If the law would raise a promise by the accused to repay the bail it would do so in all cases, as well where there was such intent to secure bail to enable escape, as where there was not. Thus the law would aid the bad purpose to the defeat of public justice. So with subrogation. It does by no means follow from the fact that the law raises no promises to pay, that neither will it allow an express contract of indemnity; for in case of an express contract, if such corrupt purpose were proven, it would avoid the contract. It is also settled that though a criminal recognizance is a lien for the state on land, yet the bail surety cannot be substituted to the lien, and this for like reasons against raising an implied promise of repayment to the bail. But though there is no such implied promise to sustain an action by the bail against the principal in the recognizance, and no subrogation in equity, to the lien, can the accused make an express contract by bond, deed of trust, or oral promise to indemnify? This is denied in 3 Amer. & Eng. Ency. L. 684, and 16 *Id.*172. In *Simpson* v. *Roberts*, 35 Ga. 180, it is held that a mortgage indemnity by the accused is valid. In *U. S.* v. *Ryder*, 110 U. S. 729, the syllabus states that "Without an express contract of indemnity a surety on a recognizance for the appearance of a person charged with committing a criminal offence against the laws of the United States, cannot maintain an action against the principal to recover any sums he may have been obliged to pay by reason of forfeiture of the principal, and he is not entitled to be subrogated to the rights of the United States, and to enjoy the benefit of the government priority." It is true, this *precise* question was not involved, but it was a question of subrogation. The court held that there is no implied promise or subrogation, but the syllabus imports that there may be an express contract

to indemnify.  The opinion clearly imports this.   It refers.
approvingly to the Georgia case, and says that it accords.
with the English case of  *Chipps* v. *Hartnoll* holding an
express contract good.   In *Maloney* v. *Nelson*, 144 N. Y.
182, was such a mortgage of indemnity.   The syllabus says:·
" It seems that such a contract of indemnity is not void as.
against public policy."   The opinion by Peckham, now Mr..
Justice Peckham, says:   " This leaves it unnecessary to con-
sider the other defenses set up in the answer of the de--
fendant Nelson, although we must say that the claim that
the defendant's contract was void as against public policy,
does not impress us as being a good defense, at least in
this state."  In *Maloney* v. *Nelson*. 158 N. Y. 351, is a point.
in the syllabus reading thus:   " Indemnity bail in a criminal
case is not contrary to the  public  policy of this State; and·
the fact that a bond and mortgage  were given to indemnify·
bail does not render them void."   The opinion refers to the
claim by some that such a contract is void, and quotes with.
approval what Judge Peckham had  said, above quoted, and
went on to disapprove the claim that such a contract is void..
When that case was in the Appellate Division, the court said
that " in view of the fact that contracts for the indemnity of
sureties upon bail bonds have been frequently enforced in the
courts, the fact that their  validity has not been successfully
attacked is of itself strong evidence that they have been pre-
sumed to be legal.   In fact there is no case holding that a.
contract made by a  third  party to indemnify  a surety upon
a recognizance is illegal, but all such contracts have been.
sustained.   The only case in which there has been a sugges-
tion that such contracts are invalid is where they have been.
made by the principal himself.  It is not perceived that there
is any valid distinction in principle between a contract made
by the accused and one made by somebody  else  for his ben--
efit, but, nevertheless,  that distinction  seems to exist in the
books, and to result in contracts  on the one hand being held.
valid, and on the other hand being disaproved." *Maloney* v.
*Nelson*, 12 Appell. Division, p. 548,   It is suggested that.
these New York cases are based  on  statute allowing an ac-
cused to deposit money instead of recognizance.   How does.
that affect the question?   Where that is the case there is no·

surety to be made careless. How does that change the question of public policy in case there is a surety?

The books say that whilst an indemnity given by an accused is bad, a friend may indemnify the bail. 16 Am. & Eng. Ency. L. 172. It is not easy to see why the bail is not made careless as well where the friend indemnifies as where the accused does. If such be law, this would not relieve Davis. This suit is against Davis. Does it make any difference that Sutton signed the bond? If Davis had given a bond, Sutton not joining, it would be binding according to the rule or exception just stated.

I shall not review conflicting authorities. JUDGE MILLER's dissent will well obviate that labor. I will remark, as to *U. S.* v. *Simmons*, 47 Fed. 575, that the court had before it the question whether it would accept as surety a person who had taken indemnity. That was a matter within the court's *discretion*.

The law allows bail. We may say that the law favors bail as a relief from prison in cases where bail is grantable, and it would tend to defeat this merciful provision of law, if we should adopt the harsh rule that a man, perhaps, innocent, cannot use his property to indemnify his friend to relieve him from prison bars. We do not see that the matter is so far against public policy as to impel us to adopt so severe a rule. Pingree on Suretyship, section 416 says: "In view of the fact that contracts for the indemnity of sureties upon bail bonds in criminal cases have been frequently enforced in the courts, it is strong evidence that they have been presumed, by the bar and bench, to be legal." So far as we know the understanding of our state bar accords with this view. We think such indemnity contracts are often made in West Virginia.

Is it seriously suggested that Carr cannot sue in equity before payment of the recognizance debt by him? The bond of indemnity is a contract liability, which would support such suit. But there is the award of execution against Carr on the recognizance. That fixes a debt and liability. In case of a bond to *indemnify* that judgment is conclusive of liability and binding on Davis. See cases as to effect of judgment upon indemnitor or in a bond of indemnity to indemnify against a judgment against indemnitee

in *State* v. *Abbott*, (61 S. E. 369,) 63 W. Va. 189. This bond was to indemnify Carr against a judgment or award of execution on the recognizance. It could have no other meaning, and in such case the cases say that the judgment or award of execution fixes the debt. *State* v. *Nutter*, 44 W. Va. 388; 7 Rob. Prac. 150; 22 Am. St. R. 203. "A bond to save harmless against judgment is broken the moment a judgment is recorded against the obligee." 16 Am. & Eng. Ency. L. 177. Even though by default. Payment not necessary. 4 Am. & Eng. Ency. L., bottom p. 695. Having thus a demand Carr can go into equity to set aside a fraudulent conveyance. Our fraudulent conveyance statute, Code, chapter 74, section 9, says that any one is a "creditor" under it who, but for the bad deed, would have right to subject the property. The statute "embraces all who have a valid cause of action." 1 Moore, Fraudulent Conveyances, p. 198. "Under this statute any creditor at large of the fraudulent debtor, without respect to the form or character of the debt, may maintain a suit to set aside a conveyance as fraudulent as to him, even though the claim be an unliquidated one founded upon no certainty as to the amount of the damages claimed, for instance, damages from a breach of promise to marry." Hogg's Eq. Princ., sec. 183. We find in 20 Cyc. 421, this: "Existing creditors are, as the words imply, persons having subsisting obligations against the debtor at the time the fraudulent alienation was made or the secret trust created, although their claims may not have matured or been reduced to judgment until after such conveyance. A contingent liability is as fully protected against fraudulent and voluntary conveyances as a claim certain and absolute, and whoever has a claim or demand arising out of a pre-existing contract, although it may be contingent, is a creditor whose rights are effected by such conveyances and can avoid them when the contingency happens upon which the claim depends." "If A. gives a mortgage to C. to indemnify C. against his endorsement for A. a bill of *quia timet* may be brought by C. against A's. representatives, for a decree that they shall pay B. and indemnify C. against his endorsement." *Call* v. *Scott*, 4 Call. 402, cited 40 W. Va. 47. A principal undertakes to indemnify his

surety by payment.	So does one who undertakes to in-
demnify a bail in a recognizance.	Both stand alike as to
the right to call on the principal or indemnitor to pay to the
relief of the principal and indemnitee.	It is thor-
oughly settled that a surety may, before payment, in
equity, compel the principal to pay in exoneration.	It is
believed that the law cited in *Neal* v. *Buffington,* 42 W.
Va. 327, will verify the above proposition.	Such is the
general law.	27 Am. & Eng. Ency. L. 475.	It is also
clear that equity will place a liability where it ultimately
s.

We reverse the decree, overrule the demurrer, and re-
mand the case.

*Reversed.*

MILLER, JUDGE, (*dissenting:*)

I cannot concur in the opinion of the majority.

The grounds of demurrer relied on are: First, that the
bond of indemnity is void; First, because against public policy;
Second, want of consideration, and want of mutuality;
Third, because the plaintiff's bill fails to show plaintiff has
been unable, by the use of means prescribed, to procure
the appearance of the prisoner in court in discharge of his
recognizance, or that he being solvent, is able to pay, or
has paid the execution awarded against him, and thereby
sustained any actual loss or damages; and, Fourth, because
the liability, if any, of R. C. Davis, on said bond, is not
a debt within the meaning of sections 3099 and 3100, Code
1906.

Is the bond void on grounds of public policy, or want
of consideration? If it is it will not be necessary to con-
sider any other questions argued; for then the entire foun-
dation for the suit fails, and the other questions can not
be said to fairly arise.	The question has never been de-
cided by this Court; and but few cases have been cited or
found by us from other courts, in which the question has
arisen and been passed upon.

It is conceded that the effect of a bail bond is to transfer
the legal custody of the prisoner from the state to the bail,
with the power to arrest, or cause his arrest and delivery
to the lawful authorities at any time, whether within

or without the jurisdiction of the court, in discharge of his recognizance.　Chapter 156, Code 1906, particularly section 8 thereof; 5 Cyc. 126-127-128; *In Re Von Der Ahe*, 85 F. R. 959.　The primary object of a bail bond in a criminal case is not to secure to the state the payment of the penalty in the bond, but the presence of the prisoner, that he may receive the judgment of the court on his guilt or innocence, and, if guilty, the punishment which the law imposes.　The obligation of the bail is to accomplish this, and to this end he will be subrogated to the rights of the state to take out all proper process, but not to any of its rights to recover the penalty of the bond.　*U. S.* v. *Ryder*, 110 U. S. 729.

In view of the relationship of duty and obligation of bail and principal it has been held that there is no implied promise of principal to bail to answer an action against him to recover the penalty incurred by his default, although such action might be maintained on such implied promise to recover costs incurred by the bail.　Highmore on Bail, 204; *Fisher* v. *Fallows*, 5 Esp. 171; *Jones* v, *Orchard*, 16 C. B. 614; *Cripps* v. *Hartnoll*, 4 B. & S., 414, all cited in *U. S.* v. *Ryder*, *supra*.

There is no doubt, however, that as a general rule, a principal may lawfully indemnify his surety against loss by the conveyance of property, except in cases of criminal arrest.　1 Brandt on Suretyship and Guaranty, section 240. But when we come to the question of the legality of a bond or other contract of indemnity given by principal to bail on a criminal case, a different question is presented. In 2 Brandt on Suretyship and Guaranty, section 610, it is is said: "If a party accused of crime, in order to induce another to become his bail, gives such other a mortgage for his indemnity, the mortgage will be valid for that purpose."　But, as this writer acknowledges, this doctrine is based principally on *Simpson* v. *Roberts*, 35 Ga. 180, in which case the court replied to the argument based on public policy.　"We are not prepared to sustain this doctrine. That a principal should, in case of default, not indemnify his bail against the effects of his forfeiture or failure to attend and answer for the crime, has never been doubted by any body, and no authority is offered to support the posi-

tion." Mr. Brandt says, however, in the same connection: "While the foregoing is fully borne out by the Georgia case cited, decided in 1866, the editor of this edition considers it more than doubtful in view of later decisions that are also referred to in the note." And this case, he says in the note "cites no authority." In *Ratcliffe* v. *Smith*, 13 Bush (Ky.) 172, the principal was indicted for horse stealing, and to obtain bail and his release conveyed land to his bail absolutely, in consideration that he might leave the state and fail to answer the charge against him; and in a suit to have the deed declared a mortgage the court dismissed the bill on the ground that the contract was illegal and against public policy. *Herman* v. *Jeuchner*, Law Rep. 15 Q. B. Div. 561, decided in 1885, invloving a deposit of money with the surety, holds the same doctrine, overruling *Wilson* v. *Strugnell*, L. R. 7 Q. B. Div. 548. In the earlier case of *Jones* v. *Orchard*, 16 Com. B. (81 E. C. L. R.) 614, 623, decided in 1855, this doctrine is practically affirmed, for the English court there says: "It is unnecessary to decide that point on the present occasion, although we are inclined to think the objection well founded and that such a contract would be contrary to public policy." The point actually ruled in that case was that an action by bail against principal in an estreated recognizance, for the payment of the prosecutors costs, would lie upon an implied indemnity. In *Cripps* v. *Hartnoll*, *supra*, the plaintiff at the request of defendant, and on his promise of indemnity, became bail for the appearance of his daughter charged with crime, and, on her default, sued defendant on his promise. The precise point decided was that such a promise of indemnity was not a "special promise to answer for the debt, default or miscarriage of another person," and therefore not within section 4 of the Statute of Frauds, 29 Car. 2 c. 3. "The court below had decided this case on the authority of *Green* v. *Cresswell*, 10 A. & E. 453, holding in the effect, that in order to bring a case within said provision of the statute, "the debt or default in respect of which the promise is made must be towards the promisee." "But," says the Court, by Pollock C. B., "there is a great distinction bstween that case and the present. Here the bail was given in a criminal proceeding; and, where bail is given in

such a proceeding, there is no contract on the part of the person bailed to indemnify the person who became bail for him. There is no debt, and, with respect to the person who bails, there is hardly a duty; and it may very well be that the promise to indemnify the bail in a criminal matter, should be considered purely as an indemnity which it has been decided to be; * * * * a mere promise of indemnity is not within the Statute of Frauds." And in the same case Williams J. says: "Whether, in a case where the plaintiff becomes bail for a stranger in a civil suit, there is a duty, as between the defendant in the action and the surety, that he will render or pay the debt, so as to reconcile the case of *Green* v. *Cresswell* with the doctrine that the statute applies only to promises made to a person for whom another is answerable, I think that where bail is given in a criminal suit there is certainly no debt or duty which can be considered as due to the surety from the party on whose behalf the recognizance is given." This decision is applicable, it is true, to the case where the bail was procured on the promise of a third person, and not by the principal himself. But in a note to this case Mr. Parsons, editor, by reference to several decisions of the Courts of this country, regards it as having gone too far in holding there is no privity of contract of indemnity, primary and not collateral to the principal undertaking, with respect at least to the application of the Statute of Frauds thereto.

But to return to the particular question, viz: the invalidity of an express contract of indemnity. It is argued that whatever may be the law of the contract as between principal and bail, in a criminal case, where there is no express contract, the liability is complete where there is such express contract as held in the Georgia case. It is claimed that *United States* v. *Ryder*, *supra*. recognizes this to be the law, unaffected by any considerations of public policy, it being there held that without such express contract the surety cannot maintain an action against his principal to recover money which he has been obliged to pay by reason of the forfeiture of the principal, thereby holding, it is argued, by implication that where there is such express contract the converse of the proposition would be equally

true. That was a case in which the bail, under the provisions of a federal statute, sought to be subrogated to the right of the government to enforce payment of the penalty out of the estate of the principal in the hands of a third person; and it was held that the plaintiff was not entitled to such relief. The Court denying the relief says, "The object of bail in civil cases is either directly or indirectly to secure the payment of a debt, or other civil duty; whilst the object of bail in criminal cases is to secure the appearance of the principal before the court for the purposes of public justice. Payment by the bail in a civil case discharges the obligation of the principal to his creditor, and is only required to the extent of that obligation, whatever may be the penalty of the bond or recognizance; whilst payment by the bail of their recognizance in criminal cases, though it discharges the bail, does not discharge the obligation of the principal to appear in Court; that obligation still remains, and the principal may at any time be retaken and brought into court. To enable the bail, however, to escape the payment of their recognizance, by performing that which the recognizance bound them to do, the government will lend them its aid in every proper way, by process, and without process, to seize the person of the principal and compel his appearance. This is the kind of subrogation which exists in criminal cases, namely, subrogation to the means of enforcing the performance of the thing which the recognizance of bail is intended to secure the performance of, and not subrogation to the peculiar remedies which the government may have for collecting the penalty; for this would be to aid the bail to get rid of their obligation, and to relieve them from the motives to exert themselves in securing the appearance of the principal. Subrogation to the latter remedies would clearly be against public policy by subverting, as far as it might prove effectual, the very object and purpose of the recognizance. It would be as though the government should say to the bail, 'We will aid you to get the amount of your recognizance from the principal so that you may be relieved from your obligation to surrender him to justice.'" In this case, as said in 2 Brandt on Suretyship & Guaranty, section 610, note 9, "the court relied on *Cripps* v. *Hartnoll*, * * * * in which A's express

promise to indemnify B against loss through B's becoming
surety on the criminal bail bond of C was enforced, and
seemed to take it for granted that an express promise to
indemnify criminal bail was not against public policy. The
question of public policy does not seem to have been fully
argued," which is true. If the right of subrogation,
claimed in *U. S.* v. *Ryder*, was properly denied on princi-
ples of public policy, the real point adjudicated in that
case, we do not perceive why the court on like principal
should not also deny any relief for the enforcement of an ex-
press contract of indemnity designed, or the effect of which
would be, to relieve, the bail from the performance of the
principal obligation of his recognizance. Such relief was
denied, on this ground, in the English case of *Herman* v.
*Jeuchner;* and *Ratcliffe* v. *Smith, supra:* and, while *Jones*
v. *Orchard,* sustained a right of action for costs incurred
on an implied indemnity, the case otherwise sustains the doc-
trine of *Herman* v. *Jeuchner.* Nor do I think *Cripps* v.
*Hartnoll,* relied on by the Supreme Court, in *U. S.* v.
*Ryder,* opposed to this view, for the point not having been
presented was not directly adjudicated in that case. More-
over, in the case of *U. S.* v. *Simmons,* 47 F. R. 575, Bene-
dict, Circuit Judge, after a review of *Herman* v. *Jeuchner,*
and some of the cases just referred to, declined on grounds
of public policy, to accept as bail persons indemnified before-
hand by the principal.

*United States* v. *Greene,* Circuit Court W. D. Virginia,
163 F. R. 442, decided in July last, involved the exact
point presented here. The court says: "The reason why
there is no implied obligation on the part of the principal
in a bail bond in a criminal case to indemnify his surety
is that such a contract is against public policy, in that it
'gives the public the security of one person only instead of
two.' As applied to an express contract by the principal
to indemnify his surety (and as distinguished from a con-
tract by a third person to indemnify the surety), it seems
to me that the reason for the rule operates quite as strongly
to invalidate such express contract as it does to deny the ex-
istence of an implied contract. An express contract by
the principal in a bail bond, in a criminal case to indemnify
his surety, at least as certainly gives the public the security

of only one person, instead of two, as would an implied contract to such effect.''

The court in that case, besides some of the cases already referred to by us, cites 16 Am. & Eng. Ency. Law, (2nd Ed.) 172; and 3 Am. & Eng. Ency. Law, (2nd Ed.) 684. In section 684 this authority says: ''For obvious reasons of public policy the law will not imply an obligation, nor will it enforce an express agreement, on the part of the principal, to indemnify his bail against the amount of penalty incurred by his default.''

If because the public will be deprived of two sureties instead of one, be the correct reason for the rule that the law will not imply an obligation on the part of principal to bail, and will hold his express contract of indemnity void, as held in *United States* v. *Greene*, will not the State as surely be deprived of such double security where the indemnity is by a third person? It is only because the bail is indemnified, and is no longer bound, for his own protection, to bring in his principal, that it can be said the public has been deprived of one of its sureties; and is he not as surely indemnified where his contract is with a third person as with the principal in the recognizance? What possible difference can it make to the bail how or by whom he is indemnified?

The bond in the case at bar is the bond of the principal in the recognizance, and falls directly within the rule stated: true there are sureties in the bond; but if void as to the principal is not the bond void also as to the sureties? If the law will relieve the principal in the bond for reasons rendering it void as to him in its very inception, it will surely not hold the sureties. 1 Brandt on Suretyship & Guaranty, section 163. The cases which recognize this distinction all refer it to *Cripps* v. *Hartnoll*, *supra*, where the question of public policy was not even mooted, certainly not decided.

Look at the situation here. The bail is seeking to charge the property of a surety in an indemnifying bond, not binding on the principal, for the amount of the judgment against him on his recognizance of bail. He did not allege or prove that he had been unable by the use of the means which the law provides for his own protection, to recapture

his principal and bring him into court. Can it be law that bail, thus in default, can cast the loss on sureties in an indemnifying bond? Principals of natural justice would seem to forbid it.

My conclusion, based on reason and authority, is that the contract of indemnity involved in this case is illegal and void, and that a court of equity should afford the plaintiff no relief.

I need not respond to any of the other points presented in argument, for no matter what the rights of the plaintiff therein might be when involved in the enforcement of a legal contract, they can not avail him in a case of this kind. I would affirm the decree below.

ROBINSON, JUDGE, (*dissenting*):

Public policy and the law demand a different decision. The poorest man, if honest, can find bail. The richest man, for whom those knowing him would not vouch without indemnity, should not be allowed to furnish bail by virtually purchasing it. The mere fact that indemnity is furnished indicates that confidence is not reposed. Bail is a matter of confidence and personal relation. It should not be made a matter of contract or commercialism. Our statute law does not even imply that one may become surety for himself on recognizance to appear and answer a criminal charge. Upholding indemnity, in any form, under contract implied or express, in effect, allows one to be his own surety for his appearance. Thus he or his friends may buy his freedom from answering the law. This was never contemplated. And we should not permit it to be contemplated, now that the question is one of the first instance here. Why provide for a bail-piece, intended to promote justice, and then destroy its effect and utility? Why open the door to barter freedom from the law for money?