[No. 8834.  Department One.  September 20, 1910.]

N. FRED ESSIG *et al.*, *Respondents*, v. C. S. TURNER *et al.*,
*Appellants.*[1]

INDEMNITY—FOR BAIL—CONTRACTS—VALIDITY—WHAT LAW GOV-
ERNS.  A bond to indemnify bail furnished by a person convicted in
a Federal court is not governed by Federal laws merely because the
United States might have refused to accept bailors who had agreed
to take indemnity, where the bailors were accepted by the United
States and the bond was executed within, and between citizens of,
this state.

INDEMNITY—FOR BAIL—CONTRACTS—VALIDITY—PUBLIC POLICY.  Un-
der the statutes of this state, authorizing a prisoner to deposit money
in lieu of bail, a bond to indemnify sureties on a bail bond is not
void as against public policy in that it removes the inducement for
vigilance; especially where the indemnifying bond increased the
number of persons interested in securing the presence of the prisoner.

SAME—CONSIDERATION FOR INDEMNITY FOR BAIL.  A bond to in-
demnify the sureties on a bail bond is not void for want of considera-
tion because executed after the giving of the bail, the recital showing
that it was given to induce the continuance of the bail.

SAME—BONDS—EXECUTION—EVIDENCE—SUFFICIENCY.  The execu-
tion of an indemnity bond is sufficiently shown, although the sureties
insisted that they only signed a blank sheet of paper which was sub-
sequently attached to the writing, where the bond, typewritten, itself
shows that it could not have been executed in that way, the signa-
tures appearing in regular order over lines regularly spaced therefor.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered November 4, 1909, upon
findings in favor of the plaintiffs, in an action on an in-
demnity bond, after a trial on the merits before the court
without a jury.  Affirmed.

*H. N. Martin* and *Poindexter & Moore* (*O. C. Moore*, of
counsel), for appellants.

*Graves, Kizer & Graves*, for respondents.

FULLERTON, J.—Charles C. May was convicted of a felony
in the district court of the United States for the district of

[1]Reported in 110 Pac. 998.

Washington, and sued out a writ of error to the circuit court of appeals for the ninth circuit, from the judgment pronounced thereon. Pending a hearing on the writ, he entered into a recognizance in the sum of $5,000 to the United States of America, with the respondents as sureties, conditioned for his appearance in the district court at any time his appearance should be required after the determination of the writ of error. The recognizance was dated April 2, 1906. On' April 16 following, the appellants executed and delivered to the respondents a written obligation in the form of a bond, binding themselves to refund to the respondents any sum they should be compelled to pay to the United States in case of a forfeiture of the recognizance entered into by themselves and May. May thereafter forfeited the recognizance, and the respondents were compelled to pay to the United States the full penalty thereof; namely, $5,000. They thereupon brought the present action against the appellants on the indemnity bond. They recovered in the court below, and this appeal was taken from the judgment entered therein.

The first contention made by the appellants is that the obligation sued upon is void as against public policy. In support of this it is argued that the question is one of Federal cognizance in which the rule of decision applied by the Federal courts to like contracts must be held to be controlling, and that under such rule the contract is void. This argument has its basis in the fact that the obligation was given to indemnify bail furnished to a person convicted in a Federal court, but it does not seem to us that this makes it a contract subject to Federal cognizance. It is true that the Federal court might have found the fact that the bailors had taken or agreed to take indemnity, a sufficient reason for refusing to accept them as bail, under the authority of *United States v. Simmons*, 47 Fed. 575. But since it did accept them as bail notwithstanding the fact, and did enforce against them the full penalty of their obligation, we think that court has exhausted its remedies and can have no further concern

with the acts of the bailors, or power to prevent them from recouping themselves for the loss they sustained out of property belonging to their principal, or out of the securities he furnished them for that purpose. Furthermore, the contract was executed within the state of Washington between citizens of that state, and is otherwise wholly local in character. Its only connection with the bail bond in the United States court is the fact that the execution of that bond and the remaining thereon by the respondents furnished the consideration for the execution of the obligation. It seems to us, therefore, that its validity must be determined by the laws of the state applicable to such contracts.

Considering the matter as one of state policy solely, there can be no question as to the validity of the obligation. As we have said, the invalidity of the obligation is urged on the ground of public policy, the argument being that since it is the purpose of bail to secure the appearance of the prisoner, that purpose is better subserved by unindemnified bail than when the bail is indemnified, as the former have a direct pecuniary interest in securing the appearance of the prisoner, while to the latter it is a matter of indifference whether he appears or not. But this argument can have no weight in this state. Here bail is regulated by statute, and the statute provides that the prisoner himself may, in lieu of personal sureties, deposit money in a sum equal to the amount fixed for his appearance. Plainly, therefore, it is the forfeiture of the sums fixed in the order of bail that the state relies upon to secure the presence of the prisoner, not the personal vigilance of sureties; and this being so, it cannot be contrary to the public policy of the state for the prisoner to indemnify his bail.

This precise question, under a similar statute, was before the court of appeals of New York in *Moloney v. Nelson,* 158 N. Y. 351, 53 N. E. 31, speaking to which the court said:

"It is true that in some other jurisdictions, as is pointed out in the very careful opinion of the appellate division, it has been suggested, if not decided, that it is against public policy to allow bail to become indemnified, the reason given being that the object for which the bail is required is to assure the appearance of the prisoner to answer the charge against him, and that necessarily the bail had a direct pecuniary interest in preventing the escape of the prisoner, which he would not have were he fully indemnified. That is not the public policy of this state; for the giving of bail in criminal cases is regulated by statute, and the legislature has, by its provisions, provided that a personally responsible surety may be altogether omitted if the accused prefers to make a deposit of money; he may have his choice either to give a bond with sureties, or make a deposit of money. It is the loss of the money deposited, or the assurance that the sureties will be obliged to pay the amount of the bail, that is relied upon to secure the presence of the accused. It, therefore, cannot be said to be a part of the public policy of this state to insist upon personal liability of sureties, for there need not be such personal liability in any case if the accused make a deposit of money in lieu of bail, as provided by the statute."

In West Virginia, in the absence of such a statute, a similar ruling was made. *Carr v. Davis*, 64 W. Va. 522, 63 S. E. 326. So, in the following cases, the question seems to have been necessarily decided to the same effect, although the courts did not discuss it directly. *Simpson v. Robert*, 35 Ga. 180; *Holker v. Hennessey*, 143 Mo. 80, 44 S. W. 794, 65 Am. St. 642; *People v. Skidmore*, 17 Cal. 261; *Anderson v. Spence*, 72 Ind. 315, 37 Am. Rep. 162.

It would seem, moreover, that the validity of the present obligation can be upheld on another principle. The indemnity here was not furnished by the prisoner himself. It was furnished by the prisoner's friends who pledged their own estate to answer for his presence. The reason for the rule against indemnifying sureties therefore fails in this case, as it cannot be supposed that these seven persons who executed the indemnity bond would be less vigilant in their

efforts to secure the appearance of the principal than would the two who were on the original undertaking. The persons. financially interested in securing the presence of the prisoner was increased, rather than decreased, by this transaction,. and the reason for the rule failing, the rule itself must fail. 16 Am. & Eng. Ency. Law (2d ed.), p. 172. We hold, there-- fore, that the obligation sued upon is not void as against public policy.

The appellants next insist that the obligation in suit is void for want of consideration. This contention is founded on the fact that it was executed some two weeks later than the original bond, the argument being that for the one obliga- tion to constitute a consideration for the other they must have been executed contemporaneously. But while it is true that ordinarily a past consideration will not support a. present promise, this obligation is not of that sort. Here,. by the recital of the obligation itself, it is shown that it was. executed as much to induce the bailors to continue as bail for their principal as it was to induce its original execution. Since the bailors had the right to surrender the principal at any time and relieve themselves of their obligation, the in- demnity bond had a present consideration as well as a past consideration, the former being of sufficient import to sup- port its validity.

On the question of fact presented, we feel inclined also to follow the findings of the trial judge. While the appellants, or some of them at least, testify to facts which if given credence would relieve them from their apparent obligation,. the physical facts shown here so clearly refute their state- ments that we are compelled to believe that they must have confounded this with some other transaction. Their story in brief is that this obligation was never presented to them for execution at all; that they, at May's request, placed their names on a blank sheet of paper as evidence that they would go his bail if later called upon for that purpose, and that this paper was subsequently attached to the writing:

making the purported obligation. But the bond itself bears on its face conclusive evidence that it could not have been executed in that way. The bond is formal in its character, having been prepared by an attorney, the signature of the obligors follow one another in regular order, are evenly spaced, and are written on and over lines placed on the paper by the use of a typewriter. While many more evidences of the genuineness of the instrument might be cited, these are enough to show that it could hardly have been framed in the manner in which the witnesses testified.

The judgment is affirmed.

RUDKIN, C. J., GOSE, MORRIS, and CHADWICK, JJ., concur.